[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2003
THOMAS K. KAHN
CLERK

No. 01-13151

D. C. Docket No. 99-01332-CV-CC-1

BRIAN L. GRECH,

Plaintiff-Appellant,

versus

CLAYTON COUNTY, GEORGIA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

**(July 7, 2003)**

Before EDMONDSON, Chief Judge, and TJOFLAT, ANDERSON, BIRCH, DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON and KRAVITCH*, Circuit Judges.

HULL, Circuit Judge:

This appeal presents the question of whether a sheriff in Georgia acts as a

---

*Senior United States Circuit Judge Phyllis A. Kravitch elected to participate in this matter pursuant to 28 U.S.C. § 46(c).

county policymaker for purposes of the county's liability under 42 U.S.C. § 1983. After review, we conclude that the defendant Clayton County has no authority to direct or control the Sheriff in his law enforcement function, that the Sheriff is not a county policymaker for that function, and thus, that Clayton County has no § 1983 liability for the Sheriff's law enforcement policies and conduct regarding warrant information on the CJIS systems or the training and supervision of his employees in that regard. We affirm the entry of judgment in favor of the defendant Clayton County.

## I. BACKGROUND

Plaintiff Brian Grech ("Grech") brought this § 1983 action solely against Clayton County, Georgia ("Clayton County"). Grech's complaint asserts that he was falsely arrested on an expired bench warrant because of the Sheriff's policy of permitting invalid warrants to remain on certain computer databases and of inadequately training and supervising his employees. We discuss both Grech's 1985 arrest, which resulted in a bench warrant, and his 1998 arrest on that warrant.

### A. Grech's 1985 Arrest

In 1985, Grech was arrested for DUI and speeding in Clayton County, Georgia. The following morning, he was released from jail on bond and was given a court date of June 13, 1985, for both charges. On that date, Grech failed to

appear in the State Court of Clayton County. Grech mistakenly believed that he could handle the charges from his residence in Kentucky. On June 24, 1985, the State Court of Clayton County issued a bench warrant that revoked Grech's bond and authorized law enforcement officers to arrest him. That bench warrant referenced the case numbers for the DUI and speeding charges and stated that Grech had failed to appear in State Court.

On June 24, 1985, the bench warrant was entered into the local computer database shared by the courts and the Sheriff's Office in Clayton County. On July 5, 1985, employees of the Clayton County Sheriff's Office entered the bench warrant into a statewide computer database of criminal information, which is organized and regulated by the Georgia Crime Information Center ("GCIC"). The GCIC's statewide database is called the "Criminal Justice Information System" ("CJIS") and is accessible by law enforcement agencies throughout Georgia. As detailed later, the Sheriff's Office refers to its local database as the CJIS system and uses the same local terminal to access the GCIC's statewide CJIS system. Both the statewide and the local CJIS databases contain warrant information on "wanted" individuals who may be arrested by law enforcement officers.

In addition to issuing the bench warrant, the State Court of Clayton County sent Grech a letter notifying him that he had missed his court date. Grech

voluntarily returned to Georgia and entered a <u>nolo contendere</u> plea to the speeding ticket and a guilty plea to DUI on July 12, 1985. The State Court judge sentenced Grech and reprimanded him for missing his previous court date.

Grech alleges that he was not informed that the State Court earlier had issued a bench warrant. Grech assumed that the charges against him were resolved after he pled to them, was convicted, and paid his fine. The State Court reported the pleas on the local CJIS system but never removed its bench warrant from that system. The Sheriff's Office never removed it from either the local or statewide CJIS systems. Instead, the bench warrant remained active for thirteen years on both systems until July 3, 1998.

**B.    Grech's 1998 Arrest**

On July 3, 1998, a City of Fayetteville police officer stopped Grech because one of his car's tail lights was not functioning. The City of Fayetteville is in Fayette County, Georgia, which neighbors Clayton County, Georgia. When the city police officer ran a routine check on Grech's driver's license, the GCIC's CJIS records revealed an outstanding bench warrant dating back to 1985. Grech tried to explain to the city police officer that there was a mistake in the records because he had taken care of the 1985 charges. The city police officer requested advice from the Clayton County Sheriff's Office on how to proceed. After

verifying its records, the Sheriff's Office responded that Grech's 1985 bench warrant was still active. Thereafter, the city police officer arrested Grech.

Initially transported to the jail in Fayette County, Grech later was transferred to the jail in Clayton County and then released on bond. Grech spent nine hours in jail. On August 17, 1998, a judge on the State Court of Clayton County returned the posted bond to Grech. Clayton County emphasizes that, prior to Grech's arrest, the State Court never withdrew its 1985 bench warrant for Grech, and thus, that the Sheriff's Office did not err in not removing that warrant from the GCIC's CJIS systems.[1]

## C. Procedural History

In 1999, Grech brought a § 1983 action naming Clayton County as the sole defendant. Grech's complaint alleged that his constitutional rights were violated when he was arrested in 1998 pursuant to a 1985 bench warrant that the Sheriff's Office failed to remove from the CJIS systems.[2] According to Grech, defendant

---

[1] The bench warrant, referencing the DUI and speeding charges, was not removed from the local CJIS until after Grech was arrested on July 3, 1998. But, back in 1985, that Grech had entered pleas to those charges was noted on the local CJIS system. Both Captain Tommy Glaze and Warrant Officer Melba Hensel testified that there may have been an error in that CJIS entry because the entry date shown for the pleas was March 16, 1985 (when the ticket was issued) and not July 12, 1985 (when Grech actually pled).

[2] Grech's complaint sued for false arrest and denial of his due process rights in violation of both the Georgia Constitution and the United States Constitution.

5

Clayton County's "failure to ensure adequate training, policies, procedures, practices, and customs regarding the use of the GCIC Computer System constituted a pattern or practice of deliberate indifference and led directly and foreseeably to the arrest of the Plaintiff." In addition, Grech claimed that Clayton County had a custom and policy of permitting errors in warrant information to occur and to remain on the CJIS systems and of failing to prevent invalid criminal warrants from being on those systems.

In 2000, Clayton County moved for summary judgment on all claims.[3] Clayton County asserted that it had no § 1983 liability for the acts of the Sheriff or his deputies because the Sheriff was an agent of the state, not a policymaker for the county.[4]

The district court granted summary judgment in favor of defendant Clayton County on all claims. The district court concluded that the Sheriff was not a

---

[3]Grech's complaint also contained state law claims for intentional infliction of emotional distress, false arrest, and false imprisonment. In its summary judgment motion, Clayton County argued that all state law claims were barred by sovereign immunity. In his briefs in the district court and on appeal, Grech did not oppose judgment for Clayton County on the state law claims. Thus, we do not discuss those claims further.

[4]Clayton County's motion also argued that, in any event, Grech failed to produce evidence of an unconstitutional policy or custom which was the moving force behind any alleged constitutional violation. The district court did not address this issue.

§ 1983 policymaker for Clayton County when performing his law enforcement duties. The district court emphasized that under Georgia law, Clayton County does not control or direct the Sheriff in the performance of his law enforcement duties. Nor does Clayton County have policymaking authority for the Sheriff's Office's compliance with the GCIC's regulations or the training and supervision of the Sheriff's employees in that regard. Grech timely appealed.

## II. SECTION 1983 LIABILITY

### A.     County Authority and Policy Required

The Supreme Court has placed strict limitations on municipal liability under § 1983. A county's liability under § 1983 may not be based on the doctrine of respondeat superior. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A county is "liable under section 1983 only for acts for which [the county] is actually responsible." Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). Indeed, a county is liable only when the county's "official policy" causes a constitutional violation. Monell, 436 U.S. at 694. Thus, Grech must "identify a municipal 'policy' or 'custom' that caused [his] injury." Gold v. City of Miami, 151 F.3d

1346, 1350 (11th Cir. 1998) (quotation marks omitted) (alteration in original) (citing Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).[5]

A plaintiff, like Grech, has two methods by which to establish a county's policy: identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. Monell, 436 U.S. at 690-91, 694; Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988)). Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs, and Grech, must show that the county has a custom or practice of permitting it and that the county's custom or practice is "the 'moving force [behind] the constitutional violation.'"[6] City of Canton, 489 U.S. at 389

---

[5]"[I]t is when execution of a [county's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury that the [county] as an entity is responsible under § 1983." Monell, 436 U.S. at 694. This "'official policy' requirement [is] intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986) (third emphasis added); Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987) (interpreting "Monell as requiring that '[t]he municipality must be at fault in some sense for establishing or maintaining the policy which causes the injurious result . . .'").

[6]A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy. Monell, 436 U.S. at 690-91; Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994). A single incident would not be so pervasive as to be a custom or practice. City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985)

8

(alteration in original) (citing Monell, 436 U.S. at 694 and Polk County v. Dodson, 454 U.S. 312, 326 (1981)).

Under either avenue, a plaintiff (1) must show that the local governmental entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989); Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996) (citing Pembaur v. City of Cincinatti, 475 U.S. 469 (1986)).

In this case, the parties do not dispute that a Georgia sheriff acts as a policymaker; instead, their dispute is over whether the Sheriff here acts as a policymaker for the defendant Clayton County. We thus review several recent decisions which instruct us how to determine whether a sheriff acts as county policymaker for purposes of § 1983.

## B. McMillian and Turquitt

In McMillian v. Monroe County, 520 U.S. 781, 784 (1997), the United States Supreme Court concluded that, when acting in a law enforcement capacity,

---

(plurality) (stating that when establishing liability for a custom or practice, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell.")

9

Alabama sheriffs are § 1983 policymakers for the state, and not the county. Under McMillian, the determination of the policymaker issue under § 1983, although a federal question, is guided by state law. Id. at 786. McMillian further teaches that state law cannot answer the § 1983 policymaker question by "simply labeling" an official as a county or state official. Id. at 786. Instead, courts must focus on control over the official.

For example, although the Alabama Constitution provided that the state executive department includes "a sheriff for each county" and, in effect, labeled the sheriff as a state executive officer, see id. at 787, the Supreme Court in McMillian did not end its analysis there.[7] Instead, it examined Alabama Code provisions and noted that the county had no control over the sheriff's law enforcement duties, whereas the Governor and the Attorney General had such control under an Alabama statute. Id. at 789-91. Even though Alabama law suggested that the county had some influence over the sheriff (such as the county's payment of his salary and purchase of his equipment), and even though the sheriff

---

[7] In McMillian v. Johnson, 88 F.3d 1573 (11th Cir. 1996), aff'd sub nom McMillian v. Monroe County, 520 U.S. 781 (1997), we similarly determined that the Alabama Constitution's designation of a sheriff as a state official was relevant, but not dispositive, in determining whether a sheriff exercises state or county power. Id. at 1580-81. We viewed the designation of the sheriff as a state official as evidence of the county's lack of law enforcement power. Id. at 1581 n.4 ("We base our decision not on a sheriff's 'label,' but on the county's lack of law enforcement power, of which a sheriff's designation as a state official is evidence.").

was elected locally by county voters, the Supreme Court in McMillian indicated that such factors did not amount to control over the sheriff's operations. See id. at 791-92.

In Turquitt v. Jefferson County, 137 F.3d 1285 (11th Cir. 1998), this Court sitting en banc explained how to determine whether an official acts as a policymaker for a county or the state. In Turquitt, we concluded that "Alabama sheriff[s] act[] exclusively for the state rather than for the county in operating a county jail." Id. at 1288. Although noting that Alabama's Constitution "sends a clear message that a sheriff is a state officer," id. at 1289, we, too, focused on control in deciding the § 1983 policymaker issue. Rather than relying on the "state official" label, our analysis in Turquitt went beyond Alabama's Constitution and examined the sheriff's performance of his duties in operating the county jail and the lack of control that the county government had over the sheriff's performance of such duties.

Central to the McMillian and Turquitt decisions is the principle that "local governments [such as counties] can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." Turquitt 137 F.3d at 1292 (emphasis added). Indeed, in Turquitt, this Court en banc emphasized the importance of control by characterizing the inquiry in McMillian

11

as asking "which government body, under state law, had direct control over how the sheriff fulfilled [the duty at issue]." Turquitt, 137 F.3d at 1292. Holding counties liable in the absence of control over sheriffs would ignore Monell's conception of counties as corporations, would substitute a conception of counties as mere units of geography, and would impose even broader liability than the respondeat superior liability rejected in Monell. Turquitt, 137 F.3d at 1291.[8] Therefore, our examination of Georgia law must center on whether counties in Georgia have control over sheriffs. A sheriff's policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes.

Both McMillian and Turquitt further remind us that, in examining control, we must consider the particular area or function for which the government official was alleged to be the final policymaker. McMillian, 520 U.S. at 785 (law enforcement duties); Turquitt, 137 F.3d at 1287 (operation of the jail). In other words, for § 1983 liability, a determination must be made as to "who the policymaker is and in which particular area that policymaker acted." Turquitt, 137

---

[8]In Turquitt, we explained that "because counties have no control over sheriffs, allowing county liability for a sheriff's actions would ignore Monell's conception of municipalities as corporations and substitute a conception of municipalities as mere units of geography . . . [and] would impose even broader liability than the respondeat superior liability rejected in Monell." 137 F.3d at 1291 (quoting McMillian v. Johnson, 88 F.3d at 1577).

12

F.3d at 1287-88.[9]  Thus, the appropriate § 1983 inquiry under federal law is whether defendant Clayton County, under Georgia law, has control over the Sheriff in his law enforcement function, particularly for the entry and validation of warrants on the CJIS systems and the training and supervision of his employees in that regard.

## III.  GEORGIA LAW

In this appeal, plaintiff Grech's main argument is that sheriffs are county policymakers under § 1983 because Georgia's Constitution characterizes sheriffs as "county officers."  Grech contends that Georgia's statutory and decisional law supports this "county officer" classification.  The insurmountable hurdles for Grech are that, under McMillian, we must focus on control, not labels, and that, under Georgia law, counties lack authority and control over sheriffs' law enforcement functions.[10]  This is because the sheriff occupies a separate

_____

[9] In McMillian, the Supreme Court instructed that the policymaker question is not whether the sheriff acts for the state or county "in some categorical, 'all or nothing' manner" but whether the sheriff is a final policymaker for the state or county "in a particular area, or on a particular issue."  520 U.S. at 785.

[10] The arguments in Judge Barkett's concurring opinion erroneously reject the relevance of McMillian's functional and control analysis to this case.  Like Georgia law, Alabama law also characterizes the sheriff as a county official.  Indeed, the plaintiff in McMillian stressed that Alabama statutes and court rulings refer to the sheriff as a county official.  McMillian, 520 U.S. at 798.  Nonetheless, the McMillian majority examined both the sheriff's function and the county's lack of control and broadly concluded that Alabama sheriffs, when acting in a law enforcement capacity, are § 1983 policymakers for the state, and not the county.  McMillian, 520 U.S. at 784, 791.  Although the Supreme Court in McMillian emphasized that courts should

13

constitutional office independent from the defendant Clayton County. To the extent control over the sheriff exists, only the State has such authority and control. The sheriff receives his law enforcement power directly from the State. The defendant Clayton County does not delegate any of its governmental powers to the sheriff as a subunit of the defendant Clayton County.

To show the independence of the sheriff's constitutional office from the defendant Clayton County and this State control and corresponding absence of county control, we review the relevant Georgia constitutional and statutory provisions as well as applicable case law.

## A. Georgia's Constitution

At the outset, it is important to note that the only defendant in this case is the defendant Clayton County. Thus, we examine the governmental structure of the sheriff's office vis-a-vis the defendant Clayton County in Georgia's Constitution. Georgia's Constitution designates the sheriff as a "county officer" but, in the same paragraph, grants the state legislature the exclusive authority to establish and control a sheriff's powers, duties, qualifications, and minimum

---

consider the particular area or function in issue, it did not restrict its inquiry to whether the sheriff acted for the State or county in intimidating witness and suppressing evidence–the specific conduct in issue. Instead, the Supreme Court defined the area or function in issue as whether the sheriff "represents the State or the county when he acts in a law enforcement capacity" and answered that question. Id. at 785-86.

14

salary. Ga. Const. art. IX, § 1, ¶ 3(a)-(b).[11] Interpreting this constitutional provision, the Georgia Supreme Court has explained that county sheriffs are subject to the control of the Georgia legislature and are <u>not</u> county employees. <u>Bd. of Comm'rs of Randolph County v. Wilson</u>, 260 Ga. 482, 482 (1990) ("The sheriff . . . is an elected, constitutional officer; he is subject to the charge of the General Assembly and is not an employee of the county commission."); <u>Chaffin v. Calhoun</u>, 262 Ga. 202, 203 (1992); <u>Warren v. Walton</u>, 231 Ga. 495, 499 (1973).

In contrast to the control it gives the State, Georgia's Constitution does not grant counties legislative power or authority over sheriffs and expressly prevents counties from controlling or affecting the sheriff's elective county office.[12] Ga. Const. art. IX, § 2, ¶ 1(c)(1). In this regard, the Georgia Supreme Court has concluded that this constitutional restriction on the legislative power granted to counties (that is, Home Rule) prevents counties from taking action affecting the

---

[11]Georgia's Constitution provides that sheriffs "shall be elected by the qualified voters of their respective counties for terms of four years and shall have such qualifications, <u>powers</u>, and <u>duties</u> as provided <u>by general law</u>." Ga. Const. art. IX, § 1, ¶ 3(a) (emphasis added). That paragraph also provides that the "[c]ounty officers . . . may be on a fee basis, salary basis, or fee basis supplemented by salary," but that "[m]inimum compensation for said county officers may be established <u>by the General Assembly by general law</u>" and supplemented by local law or by action of the county governing body. Ga. Const. art. IX, § 1, ¶ 3(b) (emphasis added).

[12]Georgia's Constitution provides that the legislative "power granted to counties . . . shall not be construed to extend to . . . [a]ction affecting any elective county office, the salaries thereof, or the personnel thereof, except the personnel subject to the jurisdiction of the county governing authority." Ga. Const. art. IX, § 2, ¶ 1(c)(1).

15

sheriff's office. Warren, 231 Ga. at 499; see Stephenson v. Bd. of Comm'rs of Cobb County, 261 Ga. 399, 401-02 (1991).[13] Thus, Georgia's Constitution has created the sheriff's office as a separate constitutionally protected entity independent from the defendant Clayton County.

**B.     Sheriffs Perform Law Enforcement Function for the State**

The sheriffs' independence from counties is further shown by how sheriffs act as agents for the state in enforcing the laws and in keeping the peace. Georgia's Constitution provides that "[t]he Governor shall take care that the laws are faithfully executed and shall be the conservator of the peace throughout the state." Ga. Const. art. V, § 2, ¶ 2. In enforcing the laws and conserving the peace, the Governor does not act alone, but necessarily acts through state agents such as sheriffs.[14] In Georgia, the office of sheriff carries with it both the common law and statutory duties of sheriffs to enforce the laws and preserve the peace, as well

---

[13]Although Warren involved a prior version of the Georgia Constitution, the same relevant language is in the present version of the Georgia Constitution. See Warren, 231 Ga. at 499. The plain language of Georgia's Constitution provides that the powers and duties of the sheriff's office are established by the State legislature by general law. See supra note 11. Georgia's Constitution goes further and precludes counties from taking any action to affect the sheriff's office. See supra note 12. Contrary to the position in Judge Barkett's concurring opinion, the plain language of Georgia's Constitution makes the powers and duties of the constitutional sheriff's office alterable by the Georgia legislature and unalterable by the county or the county governing body.

[14]Other state actors available for law enforcement activity include the Georgia Bureau of Investigation and the Georgia State Patrol. See O.C.G.A. § 35-3-3 et seq. (GBI); § 35-2-30 et seq. (GSP).

as additional statutory duties imposed by the State. O.C.G.A. § 15-16-10(a)(1)-(8).[15] The Georgia legislature mandates that it is the express duty of the sheriff "to perform such duties as are or may be imposed by law or which necessarily appertain to his or her office." O.C.G.A. § 15-16-10(a)(8).

In McMillian, the Supreme Court pointed out that historically a sheriff had geographic restrictions but in reality "represented the State in fulfilling his duty to keep the peace."[16] McMillian, 520 U.S. at 794. Indeed, "in conserving the public peace, in vindicating the law, and in preserving the rights of the government, [the sheriff] represents the sovereignty of the State and he has no superior in his

---

[15]See Hannah v. State, 212 Ga. 313, 321 (1956) ("The office of sheriff carries with it . . . all of its common-law duties and powers, except as modified by statute."). The sheriff's office is as old as the State of Georgia, administers the law enforcement powers of the State, and is a constitutionally protected office independent from county government. See infra Section III(J). The Georgia Attorney General has explained that under Georgia law, sheriffs have statutory duties and also all of their common law duties and powers unless modified by statute, and that these duties include enforcing the laws and conserving the peace. See Ga. Op. Atty Gen. No. 69-385 (1969); Ga. Op. Atty. Gen. No. 77-83 (1977) (both construing former Georgia Code § 24-2813 (1933), now O.C.G.A. § 15-16-10). In addition, sheriffs must be state-certified peace officers, who are "vested . . . with authority to enforce the criminal or traffic laws through the power of arrest and [are charged with the] preservation of public order, the protection of life and property, and the prevention, detection, or investigation of crime." O.C.G.A. § 35-8-2(8)(A).

[16]Regarding the historical evolution of sheriffs, McMillian stated that:
> As the basic forms of English government were transplanted in [the United States], it also became the common understanding here that the sheriff, though limited in jurisdiction to his county and generally elected by county voters, was in reality an officer of the State, and ultimately represented the State in fulfilling his duty to keep the peace.

520 U.S. at 794 (internal footnote omitted).

17

county." 1 W. Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables 5 (1941), cited with approval in McMillian, 520 U.S. at 794. Thus, it is entirely consistent for sheriffs to be labeled as "county officers" in Georgia's Constitution to reflect their geographic territory, but for them still to act on behalf of the State in enforcing the laws and keeping the peace. See R. Cooley, Handbook on the Law of Municipal Corporations 512 (1914) ("Sheriffs . . . clerks and other so-called county officers are properly state officers for the county. Their functions and duties pertain chiefly to the affairs of state in the county.").

In addition to their general law enforcement duties, the Georgia legislature prescribes and controls other law enforcement duties of sheriffs. For example, the State requires that sheriffs perform specific duties relating to state courts. The Georgia legislature mandates that it is the duty of sheriffs "[t]o execute and return the processes and orders of the courts and of officers of competent authority . . . with due diligence." O.C.G.A. § 15-16-10(a)(1) (Supp. 2002). The State mandates that sheriffs, in their respective counties, have a duty to attend all sessions of the superior court of the county,[17] to publish sales, citations, and other proceedings as required by law, to keep an execution docket, and to keep other

_____

[17]In Georgia, superior courts of the county are the State's courts of general jurisdiction. See Ga. Const. Art. 6, § 4, ¶ 1; O.C.G.A. § 15-6-8.

18

specified records.  O.C.G.A. § 15-16-10(a)(2)-(6).  This same statute provides that "[i]f any sheriff or deputy fails to comply with any provision of [O.C.G.A. § 15-16-10(a)], he shall be fined for a contempt."  O.C.G.A. § 15-16-10(a)(8), (b).

The State further empowers sheriffs to act beyond the boundaries of their counties of election in certain circumstances.  Sheriffs may transfer prisoners to another county jail if the jails in their counties are in an "unsafe condition."[18]  O.C.G.A. § 42-4-4(a)(3).  In addition, the State authorizes sheriffs to exercise their discretion to "transfer[] a prisoner to another jail in another county if the sheriff concludes that such transfer is in the best interest of the prisoner or that such transfer is necessary for the orderly administration of the jail."  O.C.G.A. § 42-4-4(b).  Georgia law also empowers sheriffs to make arrests for traffic violations outside their counties.  See O.C.G.A. § 40-13-30; City of Winterville v. Strickland, 127 Ga. App. 716, 718-19 (1972).

In sum, under Georgia law, the sheriff's function, both under his common law heritage and as supplemented by state statute, is to enforce the laws and keep the peace on behalf of the State in his geographical territory.  Thus, Georgia's Constitution has made the sheriff a constitutionally protected office independent

---

[18]Unless the issue of unsafe jail conditions is properly before a trial court, only sheriffs have authority to order such prisoner transfers.  In re Irvin, 254 Ga. 251, 253-54 (1985).

from the defendant Clayton County and prevented the defendant Clayton County from taking any action to affect the sheriff's office.

## C.     State Controls Qualifications, Salary and Training

The Georgia legislature also has declared that "proper qualifications and standards be required of the . . . sheriff so as to increase the effectiveness of the several sheriffs of this state as law enforcement officers to combat crime." O.C.G.A. § 15-16-1(a). The State mandates a detailed set of qualifications that a person must satisfy to be a candidate for the sheriff's office in any county. See O.C.G.A. § 15-16-1(a)-(c). For example, the State requires that a sheriff be at least twenty-five years old, not have a felony record, be a resident of the county for at least two years prior to offering candidacy, and be a registered or certified peace officer or complete the requirements of being a certified peace officer within six months after taking office. O.C.G.A. § 15-16-1(c)(1)(B), (D), (F), (J). The State sets the sheriffs' minimum salary and requires that it be paid from county funds based on the county's population. O.C.G.A. § 15-16-20(a)(1).

In addition, the State fixes the training requirements for sheriffs-elect and existing sheriffs in all counties. O.C.G.A. § 15-16-3. Notably, if a sheriff fails to comply with the annual training requirements, the Governor may suspend the sheriff without pay for ninety days. O.C.G.A. § 15-16-3(e)(4). Newly-elected

20

sheriffs must complete specialized training provided by the Georgia Sheriffs'

Association with the assistance of the Georgia Public Safety Training Center.

O.C.G.A. § 15-16-3(b). Thereafter, sheriffs must complete at least twenty hours of

training annually. O.C.G.A. § 15-16-3(e)(1). The Georgia Sheriffs' Association

uses state or federal funds to cover all training costs. O.C.G.A. § 15-16-3(d). The

State further mandates that a sheriff's failure to complete training requirements

will result in the loss of arrest powers. O.C.G.A. § 15-16-3(b), (e)(4).

## D.    State Investigation and Suspension

The State, not counties, has the right to investigate and suspend sheriffs. If

a sheriff is suspected of any misconduct, the Governor may initiate an

investigation and may suspend the sheriff. O.C.G.A. § 15-16-26(a), (c).[19] The

investigation is conducted by a committee, composed of two sheriffs, who are

selected by the Governor, and the State Attorney General, and is funded by the

---

[19]The Governor may determine that an investigation of a sheriff "should be made as a result of criminal charges, <u>alleged misconduct in office</u>, or alleged incapacity of the sheriff to perform the functions of his office." O.C.G.A. § 15-16-26(a) (emphasis added). This investigation-suspension statute addresses the Governor's authority and control over only the sheriff and grants broad investigation-suspension powers regarding a sheriff's misconduct in the performance of his duties. This statute does not cover county commissioners, and we can locate no parallel state statute granting the Governor the same express broad authority and control over county commissioners. Instead, a wholly distinct statute, O.C.G.A. § 45-5-6, addresses the removal of public officials, including county commissioners, but only in this limited situation: after a grand jury's indictment for a felony criminal charge and only if that the felony indictment relates to the performance or activities of the public official's office. O.C.G.A. § 45-5-6(b).

21

State. O.C.G.A. § 15-16-26(a). Within thirty days, the committee provides the Governor a report of its investigation. O.C.G.A. § 15-16-26(b). If the committee recommends suspension, the Governor may suspend the sheriff for up to sixty days and may extend that suspension for thirty additional days. O.C.G.A. § 15-16-26(c). The Governor also is "authorized to request the district attorney of the county of the sheriff's residence to bring a removal petition against the sheriff." Id.[20]

## E. Lack of County Control over Sheriff and Deputies

---

[20]The Governor also may require further investigation "by the committee, by the Georgia Bureau of Investigation, by other law enforcement agencies of this state, or by any special committee appointed by the Governor for such purpose." O.C.G.A. § 15-16-26(c). The judicial proceedings for removal of a sheriff are conducted in an manner identical to those for the removal of a clerk of the superior court under O.C.G.A. § 15-6-82. O.C.G.A. §§ 15-16-10(b) (Supp. 2002) & 42-4-4(c).

Judge Barkett's concurring opinion mistakenly relies on Cole v. Holland, 219 Ga. 227 (1963), which involved whether a criminal conviction must precede a petition to remove a sheriff from office. The Georgia Supreme Court rejected this argument that a conviction was a condition precedent to removal proceedings. Id. at 229. If anything, Cole illustrates the point that the county governing authority has no control over the sheriff. When the sheriff is suspected of misconduct in the performance of his duties, the Governor may initiate an investigation funded by the State government, and the Governor has the authority to suspend the sheriff. O.C.G.A. § 15-16-26. Significantly, no county governing authority has such power. The same concurring opinion also errs in how it relies on Gipson v. Bowers, 263 Ga. 379 (1993), for the proposition that the Governor "can take no official action against a sheriff unless there has been a criminal indictment" first. Id. at 379. This is because a wholly separate statute, O.C.G.A., § 45-5-6, does provide for removal of public officials, including the sheriff, upon a grand jury's indictment for a felony. The above Georgia statutes, however, independently address only the sheriff and the Governor's investigation and suspension of the sheriff for any misconduct in office or the alleged incapacity of the sheriff, which do not require a criminal indictment. Compare O.C.G.A. § 15-16-26 with § 45-5-6.

22

In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law enforcement duties and policies. Counties also have no role in the training or supervision of the sheriff's deputies. Instead, sheriffs exercise authority over their deputies independent from the county. Sheriffs alone hire and fire their deputies. O.C.G.A. § 15-16-23; Wayne County v. Herrin, 210 Ga. App. 747, 751 (1993).

Georgia courts have concluded that sheriffs' deputies are employees of the sheriff and not the county. Warren v. Walton, 231 Ga. 495, 499 (1973) (recognizing that "[d]eputy sheriffs . . . are employees of the sheriff, whom the sheriffs alone are entitled to appoint or discharge") (internal quotation marks omitted); Drost v. Robinson, 194 Ga. 703, 710 (1942); Brown v. Jackson, 221 Ga. App. 200, 201 (1996) (noting deputy sheriffs "were employees of the sheriff and not Peach County"); Herrin, 210 Ga. App. at 751; Pettus v. Smith, 174 Ga. App. 587, 588 (1985); cf. Boswell v. Bramlett, 274 Ga. 50, 51 (2001) ("[E]mployees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority.").

23

Georgia courts also speak with unanimity in concluding that a defendant county cannot be held liable for the tortious actions of the sheriff or his deputies in performing their law enforcement activities. Wayne County Bd. of Comm'rs v. Warren, 236 Ga. 150, 152 (1976) ("[A] county has no liability in connection with the violations of the civil rights of any person by a county officer."); Brown, 221 Ga. App. at 201 (affirming summary judgment for Peach County because the Peach County sheriff, not Peach County, was the proper party to sue); Lowe v. Jones County, 231 Ga. App. 372, 373 (1998) (concluding "deputy sheriffs are employees of the sheriff, not the county, and the county cannot be held vicariously liable as their principal") (emphasis added); Pettus, 174 Ga. App. at 588 (affirming summary judgment for county board of commissioners and concluding, "[a]s the county commissioners had no control over the official duties of the deputy sheriff . . ., they had no duty to determine whether a high-speed driving course rather than a defensive driving course was reasonably required to be supplied to deputy sheriffs"); Chadwick v. Stewart, 94 Ga. App. 329, 329 (1956).[21]  In two of these

---

[21] Lowe, Brown, and Pettus involve respondeat superior liability of the sheriff for his deputies' acts.  The Chadwick court also cited former Georgia Code § 24-201 (1933), which provided:  "All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions, suits, and disabilities whatever, which they, or either of them, shall incur in respect of any matter or thing whatever relating to or concerning their respective offices."  This section is now codified in O.C.G.A. § 15-13-1, which similarly provides: "All sheriffs, deputy sheriffs, coroners, jailers, constables, and other officers of court shall be liable to all actions and disabilities which they incur in respect of any matter or thing relating to or

24

cases concluding that the county was not liable, the plaintiffs brought actions against the sheriff as a defendant in his official and individual capacities and separately against the county as a defendant. Brown, 221 Ga. App. at 201 (Peach County sheriff, not Peach County, was the proper party to sue); Lowe, 231 Ga. App. at 373 (noting that plaintiff brought action against county as well as sheriff in official capacity).

Likewise, Georgia courts have concluded that counties are not liable for, and not required to give sheriffs money to pay, judgments against sheriffs in civil rights actions. See Wayne County Bd. of Comm'rs v. Warren, 236 Ga. 150, 152 (1976) (stating a county has no liability for the violations of the civil rights of any person by a county sheriff). The Georgia Supreme Court in Warren quoted a Georgia statute stating that "[a] county is not liable to suit for any cause of action unless made so by statute." Id. at 151 (quotation marks omitted).[22] Thus, by

concerning their respective offices."

[22] The statute quoted in Warren is former Georgia Code § 23-1502 (1933), which is now O.C.G.A. § 36-1-4. In the subsequent decision of Chatham County Commissioners v. Rumary, 253 Ga. 60 (1984), the Georgia Supreme Court held that the Chatham County Board of Commissioners was required to pay a judgment against a deputy sheriff for damages in an automobile collision because Chatham County's own Code provided for the defense of the deputy at trial and payment of final judgments awarded in courts. Id. at 60-61. The Georgia Supreme Court emphasized that "[t]he nature of the Board's liability here is not that of *respondeat superior*, but exists solely by virtue of its voluntary and self-imposed obligation to provide indemnification for the acts of its employees committed during the performance of their duties." Id. at 61. There is no evidence in this case that Clayton County voluntarily has agreed to provide indemnification. To the contrary, Clayton County contends that it is not liable because

25

statute, the county was not liable. In addition, the Georgia Supreme Court concluded that "there is no duty of the county to furnish the sheriff with money to settle a civil rights judgment against him." Id. at 152.

## F.    County Civil Service Systems

The independence of sheriffs from counties is further shown by Georgia law's treatment of sheriffs and county civil service systems. Although counties may adopt civil service systems, sheriffs have independent authority to hire their deputies and to decide whether their deputies are placed under a county civil service system. See O.C.G.A. § 15-16-23; 36-1-21(Supp. 2002); Brett v. Jefferson County, 123 F.3d 1429, 1434 (11th Cir. 1997); Herrin, 210 Ga. App. 747, 753 (1993); cf. Gwinnett County v. Yates, 265 Ga. 504, 508 (1995) (concluding that a county "can take no action affecting" the employees of an elected official, unless the elected official has placed his office under a county's civil service system). For example, in Herrin, the Georgia Court of Appeals examined O.C.G.A. § 36-1-21, which allows counties to create a civil service system and to include employment positions with elected county officers in that system "'upon the written application of the elected county officer.'" 210 Ga. App. at 748-50

the sheriff is not a policymaker for the county.

26

(quoting O.C.G.A. § 36-1-21(b)).[23] The Georgia court concluded (a) that "deeply embedded in our case law is the notion that the sheriff alone has the authority and power to appoint and fire deputies," but (b) that "the General Assembly has definitely and positively provided for the creation of county civil service systems and conferred on elected officials [such as the Wayne County Sheriff] the ability to bring all employees in their office into the system." Id. at 751, 753.

## G.    County Police Department

The counties' lack of authority and control over sheriffs starkly contrasts with the counties' powers over their own county police department. Georgia counties have law enforcement power only to the extent delegated by the State. The Georgia legislature authorizes county governing bodies to create a county

---

[23] In Herrin, when his term was about to end, the Wayne County sheriff applied to have positions in the sheriff's office made subject to the Wayne County personnel system. 210 Ga. App. at 748. Both Wayne County and Sheriff Warren "fully complied with all [the] requirements set forth in O.C.G.A. § 36-1-21(b) necessary to bring employees of the sheriff's office within the personnel system." Id. at 750. Reconciling O.C.G.A. §§ 15-16-23 and 36-1-21, the Georgia court held "that once positions in a sheriff's office have been made subject to a personnel or civil service system, a sheriff's authority to appoint deputies pursuant to O.C.G.A. § 15-16-23 is limited to vacancies" created by resignation, retirement, or removal under the applicable personnel or civil service system. Id. at 753.

This same O.C.G.A. § 36-1-21(b) was examined in Brett, 123 F.3d at 1434, in which this Court concluded that deputy sheriffs are "at-will" employees of the sheriff. We agreed with the district court that "the former deputy sheriffs had no protected property interest under Georgia law because [Sheriff] Compton's efforts to place deputy sheriffs under the civil service system failed to satisfy the statutory requirements of O.C.G.A. § 36-1-21(b)." Id. Sheriff Compton had made an oral request, but had not completed the required written application. Id. In this case, there is no indication in the record that Clayton County has a civil service system or that the sheriff has taken any action to have his deputies subject to a county personnel system.

27

police force through a resolution or ordinance of the particular county governing body followed by the approval of qualified county electors. O.C.G.A. § 36-8-1(b). The county governing body controls the hiring and removal of its county police and may "abolish a county police force at any time." O.C.G.A. § 36-8-2. County police officers are subject to the "direction and control of the county governing body." O.C.G.A. § 36-8-5. County police officers have "[t]he same power to make arrests and to execute and return criminal warrants and processes in the county of their election or appointment . . . as sheriffs have." O.C.G.A. § 36-8-5(1).

The net result is that, under Georgia law, the county police department is the vehicle through which a county fulfills its policing functions, but the sheriff's office is a vehicle through which the State fulfills part of its policing functions. The Clayton County Sheriff does not receive any of his law enforcement powers from the defendant Clayton County.

## H. County Treasury

We acknowledge that Georgia law grants the county significant control of the "purse strings" of the sheriff's office. The county governing body sets the total amount of the sheriff's operating budget, pays the sheriff's salary, and pays the premium for the sheriff's official bond. See O.C.G.A. §§ 36-5-22.1, 15-16-20,

28

45-4-7, 15-16-5; <u>Chaffin v. Calhoun</u>, 262 Ga. 202, 203 (1992). This financial control, nonetheless, is attenuated because (a) the State mandates the minimum salary and the minimum bond amount for sheriffs, and (b) the Georgia Supreme Court has held that the budget "must provide reasonably sufficient funds to allow the sheriff to discharge his legal duties," and that "the county commission may not dictate to the sheriff how that budget will be spent in the exercise of his duties." <u>Chaffin</u>, 262 Ga. at 203-04;[24] cf. <u>Boswell v. Bramlett</u>, 274 Ga. 50, 52 (2001) (concluding county government approves the superior court clerk's budget but does not control how that constitutionally elected officer spends the budget).

---

[24] In <u>Chaffin</u>, the county, over the sheriff's objection, shifted the responsibility for patrolling and drug enforcement to the new county police department and reduced the sheriff's budget by forty-seven percent. 262 Ga. at 202, 204. The trial court granted the county's request for an injunction requiring the sheriff to cooperate in the implementation of the plan to transfer personnel and equipment to the newly created county police department. <u>Id.</u> at 202-03. The Georgia Supreme Court affirmed, holding that the trial court had not abused its discretion in finding that the remaining budget was sufficient to allow the sheriff to perform his duties. <u>Id.</u> at 204. In doing so, the Georgia Supreme Court reaffirmed that: (1) "Sheriff Chaffin is an elected constitutional officer," <u>Chaffin</u>, 262 Ga. at 203 (citing Ga. Const. art. IX, § 1, ¶ 3(a)); (2) "[t]he sheriff is not an employee of the county commission," <u>Chaffin</u>, 262 Ga. at 203 (citing <u>Board of Commissioners of Randolph County v. Wilson</u>, 260 Ga. 482 (1990)); and (3) although the county commission has the power to create a county police force, "'the commissioners could not divest the sheriff of his power and duty to enforce the laws and preserve the peace,'" either directly or indirectly by exercise of their fiscal authority or control of county property, <u>Chaffin</u>, 262 Ga. at 203 (quoting <u>Wolfe v. Huff</u>, 232 Ga. 44, 45 (1974)).

In another budget battle between the sheriff and county commission in <u>Board of Commissioners of Randolph County v. Wilson</u>, 260 Ga. 482, the sheriff requested $70,000 to pay deputies, but the county commission budgeted a lump sum of only $60,080. <u>Id.</u> at 482. The Georgia Supreme Court held that the county commission did not abuse its authority, viewing the case as "involving the power of the commission to approve the sheriff's budget rather than the power of the sheriff to hire deputies." <u>Id.</u> at 484.

Georgia's Constitution further prevents counties from taking any action affecting any elective county office or the personnel thereof. Ga. Const. art. IX, § 2, ¶ 1(c)(1). Payment of a sheriff's salary and for equipment from county funds, when required by the state legislature, does not establish county control over the sheriff's law enforcement conduct and policies.[25]

## I.     State Sovereign Immunity

That Georgia law extends the State's sovereign immunity to sheriffs is further indicia that sheriffs act on behalf of the State.[26] The Georgia Constitution specifically provides that "sovereign immunity extends to the state and all of its departments and agencies." Ga. Const. art. I, § 2, ¶ 9(e). Georgia courts have interpreted this provision to grant sovereign immunity to sheriffs. Cantrell v.

---

[25] Alabama sheriffs are elected by county voters and paid from county funds, but the Supreme Court in McMillian found these factors insufficient to establish county control over sheriffs. See McMillian, 520 U.S. at 791 ("The county's payment of the sheriff's salary does not translate into control over [the sheriff], since the county neither has the authority to change his salary nor the discretion to refuse payment completely."). The Supreme Court also concluded that the ability of the county governing body to reduce the sheriff's budget so long as it remains reasonable results in "attenuated and indirect influence over the sheriff's operations." See id. at 791-92.

[26] While we discuss sovereign immunity solely for the sheriff's policymaker function under Georgia law, state sovereign immunity has no application in federal court in § 1983 cases. Instead, the Eleventh Amendment grants immunity to states from suits in federal courts. See, e.g., Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1231 (11th Cir. 2000); Hufford v. Rodgers, 912 F.2d 1338, 1340-41 (11th Cir. 1990). In addition, when parties raise federal claims under § 1983 in state courts, federal law must determine whether particular governmental entities are subject to suit. See Howlett v. Rose, 496 U.S. 356, 375-78, 383 (1990).

<u>Thurman</u>, 231 Ga. App. 510, 514-15 (1998) (concluding that although sheriff is entitled to sovereign immunity under Article I, § 2, para. 9(e), that immunity is waived in any action against the sheriff's official bond, as the bond falls under the written contracts exception to state sovereign immunity in Article I, § 2, para. 9(c)).[27]

The argument is made that the sheriff's immunity stems from the county, not the state, that the county's immunity controls when the sheriff is sued, and that the county defends the sheriff.  The decisions relied upon for this argument involve the county's purchase of motor vehicle insurance and the sheriff's immunity being waived to the extent that the county purchases motor vehicle insurance and defends the claim.  <u>See, e.g.</u>, <u>Cameron v. Lang</u>, 274 Ga. 122, 126 (2001); <u>Gilbert v. Richardson</u>, 264 Ga. 744, 747 (1994).

But this waiver occurs only because a Georgia statute grants counties limited authority to waive sheriffs' immunity with respect to motor vehicle liability.  <u>See</u> O.C.G.A. § 33-24-51 (granting the county discretion to purchase motor vehicle insurance and providing immunity is waived to the extent of the

---

[27]<u>But see</u> <u>City of Thomaston v. Bridges</u>, 264 Ga. 4, 7 (1994) (holding that the phrase "state and all its departments and agencies" does not include municipalities); <u>Thomas v. Hosp. Auth. of Clarke County</u>, 264 Ga. 40, 42 (1994) (concluding hospital authority–although a governmental instrumentality–is not an agency or department of the state entitled to sovereign immunity).

amount of insurance).[28] In Georgia, sovereign immunity may be waived only if a statute expressly provides that sovereign immunity is waived and the extent of such waiver. Ga. Const. art. I, § 2, ¶ 9(e); see, e.g., Cameron, 274 Ga. at 126 n.25; Woodard v. Laurens County, 265 Ga. 404, 405 (1995).[29]

While this waiver statute ties the sheriff's sovereign immunity to the county's for motor vehicles, the sheriff's general sovereign immunity granted under Georgia's Constitution is independent from the county's immunity. See Cantrell, 231 Ga. App. at 514-15; Seay v. Cleveland, 270 Ga. 64, 65-66 (1998). For example, in Seay, the plaintiffs sued the sheriff in his official capacity, alleging (1) that the sheriff was liable for his deputies' negligent disbursement of funds at a sheriff's sale and (2) that the sheriff negligently supervised his deputies. 270 Ga. at 65-66. In Seay, the Georgia Supreme Court concluded that the plaintiffs' "claims against [Sheriff] Seay in his official capacity are precluded under the doctrine of sovereign immunity and it has not been established in this

---

[28]See, e.g., Cameron, 274 Ga. at 126-27; Gilbert, 264 Ga. at 748-51; cf. Woodard v. Laurens County, 265 Ga. 404, 405 (1995). Cameron and Gilbert treated the official capacity claims against the sheriff as claims against the county, determined that the sheriff sued in his official capacity was entitled to the benefit of the county's sovereign immunity, and concluded that the sheriff's immunity was waived to the extent the county had purchased insurance.

County immunity stems in large part from O.C.G.A. §§ 33-24-51(a) and 36-1-4, which provide that a county is not liable to suit for any cause of action unless made so by statute.

[29]In addition, the Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution." Ga. Const. art. I, § 2, ¶ 9(f).

32

case that such immunity has been waived." Id. at 65. Nor has it been established, or even claimed, in the present case that the sheriff's sovereign immunity has been waived as it relates to his general law enforcement function or his office's involvement in the CJIS systems in issue.[30]

## J.    Defendant Clayton County

Judge Barkett's concurring opinion actually acknowledges that under Georgia law a sheriff (1) is not an employee of the Clayton County Commission; (2) is not subject to any control by that County Commission; and (3) is independent from that County Commission. (Concurring Opinion, Barkett, J., pp. 54, 68, 73-77). This concurring opinion attempts to circumvent the sheriff's independence from the defendant Clayton County by reframing the issue as "not whether a county commission controls the sheriff's office but whether the county controls the sheriff's office." (Concurring Opinion, Barkett, J., p.74). It argues (1) that the defendant Clayton County is not one "monolithic structure of county

---

[30]Judge Barkett's concurring opinion also relies on Haywood v. Hughes, 238 Ga. 668 (1977), for the proposition that counties, by statute, are authorized to pay for the sheriff's legal costs in civil rights suits by third parties against sheriffs. See O.C.G.A. § 45-9-21. In Haywood, however, the Georgia Supreme Court emphasized that the statute authorizes counties to do so "in their discretion" and "give[s] the county considerable latitude in determining what actions will be defended." Id. at 669 (citing Ga. Code Ann. § 89-945, which is now O.C.G.A. § 45-9-21). In Haywood, the Glascock County Commissioners had adopted, at a special meeting, a policy to pay attorney's fees in two specific actions by third parties against the sheriff. Id. If anything, this case demonstrates that the defendant Clayton County is not required to pay the sheriff's attorney's fees in actions by third parties.

33

government with the county commission at its head," (2) that the sheriff and the county commission serve as subunits of the defendant Clayton County, each sharing equally in the governmental powers of the defendant Clayton County, and (3) that the sheriff is the final policymaker for the defendant Clayton County in the area of law enforcement. Id. at p.55.

Thus, this concurring opinion raises this structural issue: whether (1) the sheriff's constitutional office is a separate entity independent from the defendant Clayton County, or (2) whether the sheriff's office and the Clayton County Board of Commissioners, as subunits, share the powers of the defendant Clayton County. The answer is the sheriff's office is an independent entity and not a subunit of the defendant Clayton County for two reasons. First, Georgia law provides that the sheriff's office derives its law enforcement powers only from the State and not the defendant Clayton County, and that the sheriff's constitutional office is independent from the defendant Clayton County. Georgia's Constitution even precludes the defendant Clayton County from taking any action affecting the sheriff's office.

Second, contrary to this concurring opinion, the defendant Clayton County is headed by its Board of Commissioners. Under Georgia law, the defendant Clayton County is a "body corporate" capable of suing and being sued and is

34

headed by the county governing body, the Clayton County Board of Commissioners. Ga. Const. art. 9, § 1, para. 1 ("Each county shall be a body corporate and politic with such governing authority . . . as provided by law."); O.C.G.A. §§ 36-1-3 ("Every county is a body corporate, with power to sue or be sued in any court."); 1-3-3(7) (defining "County governing authority" as "the board of county commissioners, the sole county commissioner, or the governing authority of a consolidated government"). For example, the Clayton County Board of Commissioners is "expressly given complete power, authority, and control relative to all county matters of Clayton County." Ga. Laws 1983, p.4509, § 3.

As example of the county governing body's head role, only the county governing body may enter into contracts for the county entity.[31] The defendant Clayton County is not contractually bound by contracts entered into by the sheriff.

---

[31]O.C.G.A. § 36-10-1 ("All contracts entered into by the county governing authority . . . in behalf of the county shall be in writing and entered on its minutes."); Ogletree v. Chester, 682 F.2d 1366, 1370 (11th Cir. 1982) ("Under Georgia law, any contract entered into with other persons in behalf of a county must be in writing and spread on the official minutes of the [County] Commission. Where that procedure is not followed, there is no enforceable agreement.") (internal citation omitted); Smith v. Murrath Enterprises, Inc., 243 Ga. App. 856, 857 (2000) ("No party is entitled to the benefits of an alleged contract with a county unless there has been a full compliance with [O.C.G.A. § 36-10-1]."); see also Waters v. Glynn County, 237 Ga. App. 438 (1999); Deason v. DeKalb County, 222 Ga. 63, 65 (1966); Graham v. Beacham, 189 Ga. 304, 305-06 (1939); Carolina Metal Products Co.v. Taliaferro County, 28 Ga. App. 57 (1922).

As noted earlier, the defendant Clayton County also has no tort liability for the conduct of the sheriff and his deputies.[32]

The fact that the defendant Clayton County is headed by its Board of Commissioners also is shown by how service of process in an action against Clayton County is sufficient under Georgia law only if served upon a majority of the county commissioners or upon the chairman of the board of county commissioners.[33] That the defendant Clayton County is headed by its county governing body, the Clayton County Board of Commissioners, is demonstrated forcefully by the fact that the plaintiff Grech actually served process on the

---

[32]See, e.g., Boswell v. Bramlett, 274 Ga. 50, 51 (2001) ("[E]mployees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority.") (emphasis added); Lowe v. Jones County, 231 Ga. App. 372, 373 (1998) (concluding "deputy sheriffs are employees of the sheriff, not the county, and the county cannot be held vicariously liable as their principal") (emphasis added); Brown v. Jackson, 221 Ga. App. 200, 201 (1996) (noting deputy sheriffs "were employees of the sheriff and not Peach County") (emphasis added); Chaffin v. Calhoun, 262 Ga. 202, 203 (1992); Mobley v. Polk County, 242 Ga. 798, 801-02 (1979); Warren v. Walton, 231 Ga. 495, 498-500 (1973).

Judge Barkett's concurring opinion gives the mistaken impression that, under Georgia law, the county entity, here the defendant Clayton County, may be liable for the torts of a sheriff and his deputies. There is not a single Georgia case, however, holding a county liable for the torts of a sheriff or his deputies. The concurring opinion cites, for example, Feise v. Cherokee County, 207 Ga. App. 17 (1992), but the Georgia Supreme Court granted certiorari and remanded Feise, and on remand the Georgia Court of Appeals entered summary judgment in favor of the defendant county. Feise v. Cherokee County, 209 Ga. App. 733, 733-34 (1993). Instead, as explained above and in Section III(E), Georgia courts speak with unanimity in concluding that a county cannot be held liable for the actions of the sheriff or his deputies.

[33]O.C.G.A. § 36-1-5; see Board of Comm'rs of Newton County v. Allgood, 234 Ga. 9, 14 (1975); Clayton County v. Sarno, 112 Ga. App. 379, 379-80 (1965).

36

defendant Clayton County by serving Crandall Bray, the Chairman of the Clayton County Board of Commissioners.

Our precedent, as well as Monell, instructs that a local governmental entity–here the defendant Clayton County as headed by the Clayton County Board of Commissioners–is not liable for § 1983 violations except for those policies and customs for which the county entity has some control and responsibility.[34] Holding the defendant Clayton County entity liable here, in the absence of any corporate control over the sheriff by that county entity, would ignore Monell's and Georgia law's conception of counties as corporations that act through a governing body, would substitute a conception of counties as mere units of geography, and would impose even broader liability than the respondeat superior liability rejected in Monell. Turquitt, 137 F.3d at 1291. Indeed, holding the defendant Clayton County liable for the law enforcement actions of the sheriff over whom it has no control would impose strict liability on that defendant county entity.

## K.    Geographic Label

---

[34]Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986) ("[M]unicipal liability is limited to action for which the municipality is actually responsible."); Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc) (stating that a county is "liable under section 1983 only for acts for which [the county] is actually responsible"); Turquitt v. Jefferson County, 137 F.3d 1285, 1292 (11th Cir. 1998) ("[L]ocal governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control."); Brooks v. Scheib, 813 F.2d 1191, 1192-93 (11th Cir. 1987).

All of this Georgia law points to the conclusion that sheriffs are not county policymakers as to their law enforcement functions.[35] Georgia's Constitution, statutes, and decisional law evince state empowerment of and control over sheriffs and a notable absence of county control. This absence requires our conclusion that the "county officer" nomenclature contained in Georgia's Constitution reflects a geographic label defining the territory in which a sheriff is elected and mainly operates and it does not make a sheriff a county policymaker.[36]

---

[35]The district courts in our circuit have reached similar conclusions in holding that Georgia sheriffs are not county policymakers under § 1983. See Fletcher v. Screven County, 92 F. Supp. 2d 1377, 1379-80 (S.D. Ga. 2000) (concluding in a § 1983 action that although Georgia law declares sheriffs to be county officers, and directs that counties elect and pay their sheriffs, it cedes to counties no meaningful level of control over a sheriff's law enforcement activities); Frazier v. Smith, 12 F. Supp. 2d 1362, 1369 (S.D. Ga. 1998) (declining to dismiss action against the sheriff in his official capacity as redundant to the action against the county because "Sheriff Smith acts independently of Camden County, except for the County's fiscal review and support of the Sheriff's department" and "[t]here is no evidence . . . to support the conclusion that Sheriff Smith is an agent of Camden County, or that the County ultimately is liable for his misconduct"); Duffey v. Bryant, 950 F. Supp. 1168, 1174-75 (M.D. Ga. 1997) (reviewing a § 1983 action against the sheriff and his deputies for the wrongful death of a county jail inmate and granting summary judgment for the defendant Cook County Board of Commissioners and its chairman because "[i]t is well-settled law in Georgia that a county and its commissioners are without authority over the sheriff or his deputies" and that its chairman "had no responsibility or authority for supervising or training officers").

[36]Judge Barkett's concurring opinion asserts that many Georgia cases refer to sheriffs as county officers. (Concurring Opinion, Barkett, J., p.61). The Georgia Constitution itself refers to the sheriff as a "county officer," and that title never has been in dispute. The crucial fact, however, is that the sheriff's primary function under Georgia law is to administer the law enforcement and peacekeeping business of the State. While this concurring opinion argues that law enforcement is a county matter, it acknowledges that Georgia sheriffs "sometimes act on state matters" and at times "function with reference to State matters." (Concurring Opinion, Barkett, J., p.60 (citations omitted)). This same concurring opinion also relies heavily on Truesdel v. Freeney, 186 Ga. 288 (1938) and describes Truesdel as a "foundational case." Id. The issue in Truesdel, however, was whether the county board could fix the salary of the clerk of

Nonetheless, under <u>McMillian</u>, we still must consider the particular law enforcement conduct of the sheriff in issue, which is the sheriff's entry and validation of warrants on the CJIS systems and his training and supervision of employees in that regard. We now review how this particular law enforcement function is controlled by the State, not counties, under Georgia law.

## IV.  WARRANT INFORMATION

### A.    Georgia Crime Information Center

The Georgia legislature established the Georgia Crime Information Center ("GCIC") to create a "system for the intrastate communication of vital information relating to crimes, criminals, and criminal activity." O.C.G.A. § 35-3-31(a). The GCIC is a division of the Georgia Bureau of Investigation, a state agency. O.C.G.A. §§ 35-3-2; 35-3-31(a) . Responsibility for the GCIC is vested with the

---

the municipal court. <u>Id.</u> Addressing the <u>clerk's</u> argument that he was a state officer, the Georgia Supreme Court noted that the clerk (1) is selected by the judge of the municipal court, (2) serves in a ministerial function in the municipal court, and (3) "has no responsibility, so far as representing the State is concerned, in any matter in which the State is primarily interested." <u>Id.</u> at 292. Based on these factors, the Georgia Supreme Court concluded that the clerk of a municipal court was not a state officer. <u>Truesdel</u>, a case about the clerk of a municipal court, has no relevancy to this case. Moreover, not a single case cited in this concurring opinion, or in footnote 12 thereof, holds a county or a county commission liable for the tortious acts of a sheriff or his deputies. (Concurring Opinion, Barkett, J., p.61, n.12).

"Director" of the center, with the guidance of the GCIC Council.[37] O.C.G.A. § 35-3-31(b).

The GCIC is charged with operating an information system for all crime and offender data, including warrant information. O.C.G.A. § 35-3-33. The GCIC has developed the "Criminal Justice Information System" ("CJIS"), which is defined as "[a]ll of those agencies, procedures, mechanisms, media, and forms, as well as the information itself, which are or which become involved in the organization, transmittal, storage, retrieval, and dissemination" of crime-related information. Ga. Comp. R. & Regs. r. 140-1-.02(2)(b).

The GCIC Director and the GCIC Council promulgate extensive rules and regulations (the "GCIC Council Rules") for the operation of the CJIS system. See O.C.G.A. § 35-3-32(b)(2), (3), & (5). GCIC Council Rules govern the conduct of the Clayton County Sheriff's Office relating to the CJIS system. Ga. Comp. R. & Regs. r. 140-2-.01(1). As a participant in the CJIS system, the sheriff's office in each Georgia county enters and removes warrant information on the local CJIS terminal, which is in turn connected with the GCIC's statewide CJIS network. Indeed, within the Clayton County Sheriff's Office, employees enter data from the

---

[37]The GCIC Council is a state regulatory body chaired by the Governor. O.C.G.A. § 35-3-32(c) (designating state Board of Public Safety as GCIC Council); O.C.G.A. § 35-2-1 (prescribing composition and appointment procedures for the Board of Public Safety).

local CJIS system onto the GCIC's CJIS network from the same local CJIS computer terminal. The GCIC Council Rules regulate every aspect of warrant information, from the employee training to when and how a sheriff's office must enter and validate warrant data.[38]

## B. GCIC's Required Training

The GCIC Council Rules establish training requirements for employees in each sheriff's office. See Ga. Comp. R. & Regs. r. 140-2-.16. A Terminal Agency Coordinator ("TAC") is an employee of the sheriff's office, designated by the sheriff, to serve as a liaison between the sheriff and the GCIC for CJIS network-related matters.[39] This TAC employee is trained by GCIC personnel and is subject to certification testing. Ga. Comp. R. & Regs. r. 140-2-.16(3)-(4). The TAC is

---

[38]Although the focus of our inquiry is warrant data, the GCIC Council Rules govern virtually every aspect of participation in and use of the GCIC's CJIS information and local CJIS terminals. See O.C.G.A. § 35-3-33(a)(11) (mandating the GCIC to cooperate in creating a uniform interstate, national, and international system of crime information and criminal records). For example, the Rules prescribe how criminal information should be stored, who may receive it, and how it must be sent. See Ga. Comp. R. & Regs. r. 140-2-.02. The Rules also enumerate the physical security requirements for criminal information, including requiring secure areas out of public view for network access, secure areas for local CJIS network terminals, and requiring adequate backup for criminal information data. Ga. Comp. R. & Regs. r. 140-2-.08.

[39]A TAC is considered a "CJIS network agency employee, designated by the agency head" (here the sheriff) and is "responsible for ensuring compliance with state and federal policies, regulations and laws, established by the Georgia Crime Information Center (GCIC), the National Crime Information Center (NCIC), and the National Law Enforcement Telecommunications System (NLETS)." Ga. Comp. R. & Regs. r. 140-1-.02(2)(k).

responsible for record validations, hit confirmations, and training of Terminal Operators. Ga. Comp. R. & Regs. r. 140-2-.16(3)

A Terminal Operator[40] is also an employee of the sheriff's office who enters data in the GCIC's CJIS network. Terminal Operators must complete GCIC training workbooks and certification requirements. Ga. Comp. R. & Regs. r. 140-2-.16(5)-(6). Terminal Operators enter criminal warrants into the CJIS network and annually validate them. In the Clayton County Sheriff's Office, these employees use the local CJIS system to gather warrant information and then enter it into the GCIC's CJIS system through the local CJIS terminal.

## C. Data Entry and Maintenance

To facilitate the sharing of criminal information, GCIC Council Rules specify the codes, formats, and operating procedures that must be used in entering records, including warrants, into the CJIS network terminals. Ga. Comp. R. & Regs. r. 140-2-.13(a).[41] To ensure its procedures are followed, the GCIC provides procedural manuals and operations bulletins, which contain the necessary codes,

---

[40]A Terminal Operator is a "full-time or part-time employee of a CJIS network terminal agency with one or more CJIS network terminals who performs services which include the operation of a CJIS network terminal as an integral part of assigned job duties." Ga. Comp. R. & Regs. r. 140-1-.02(3)(e).

[41]The GCIC Council Rules require the Sheriff's Office to respond to "hit confirmation request messages" within specific, prescribed time frames depending on the priority of the request. Ga. Comp. R. & Regs. r. 140-2-.13(f).

procedures and guidance for record entry.[42]  Ga. Comp. R. & Regs. r. 140-2-.13(a).

The State publishes a CJIS Manual, which the Clayton County Sheriff's Office

lists in its Standard Operating Procedures as a manual required to be kept at its

Warrant Office computer terminal.

Due to the interdependence of the statewide and local CJIS networks, the

local CJIS terminals in the Clayton County Sheriff's Office are subject to GCIC

security requirements.  The Standard Operating Procedure manual for the Clayton

County Sheriff's Office provides that "[a]ccess control to both the local level and

GCIC [stateside CJIS] . . . is an automated function of the local CJIS system."  An

operator must have a user account and password for access to the local CJIS

system.  The operator also must have a user account and a password that will clear

them for access to the GCIC's statewide CJIS network or the local CJIS terminal

will not allow access to the statewide network.

**D.    Validation of Warrants**

Sheriff's offices are required to participate in the GCIC's record verification

program, which prescribes the procedures for reviewing the validity of warrant

---

[42]The GCIC Council Rules specify which data entry forms must be used, who is permitted to collect criminal information, and who has the duty to report information to the GCIC. See Ga. Comp. R. & Regs. r. 140-2-.03.  When the Sheriff's Office desires to diverge from GCIC standards, it must receive approval from GCIC.  See Ga. Comp. R. & Regs. r. 140-2-.03(1) (alternative fingerprinting cards); Ga. Comp. R. & Regs. r. 140-2-.03(3) (plans for automatic disposition reporting).

entries contained on the GCIC's CJIS network. Ga. Comp. R. & Regs. r. 140-2-.14. These procedures include reviewing monthly validation listings sent out by the GCIC and checking in some manner with the issuing authority to verify that a warrant has not been recalled or withdrawn.[43] Ga. Comp. R. & Regs. r. 140-2-.14(1)(b)-(c). Warrant record entries that are no longer valid must be cancelled, and warrant record entries containing erroneous information must be supplemented or corrected. Ga. Comp. R. & Regs. r. 140-2-.14(1)(c)(1)-(2).[44]

## E. GCIC Audits and Sanctions

The GCIC Council Rules require a biannual audit of the Clayton County Sheriff's Office. The GCIC Council Rules explicitly make warrant "validation procedures, records, and supporting documents . . . subject to GCIC and NCIC audits." Ga. Comp. R. & Regs. r. 140-2-.07(1); 140-2-.14(2). Auditors obtain a statistical sample of active wanted, missing person, and stolen vehicle files from

---

[43]In Clayton County, the courts also record entries on the local CJIS system and update them. Thus, the Sheriff's Office contends that it checked with the State Court about bench warrants by comparing the GCIC's CJIS entries with the State Court's local CJIS entries.

[44]Defendant Clayton County asserts that the 1985 bench warrant was facially valid and properly remained outstanding because that warrant was sufficient under Georgia law for a separate substantive charge of failure to appear, and this failure-to-appear charge never was resolved. See O.C.G.A. §§ 40-13-63; 16-10-51. In reply, Grech contends that the bench warrant effectively was resolved when he pled to the DUI and speeding charges, that the bench warrant should have been recalled at that time, and thus, that he was falsely arrested. The district court did not address the merits of Grech's constitutional claims, and we need not decide these issues to resolve the § 1983 county policymaker question in this appeal.

the Sheriff's Office and review its files for compliance with the GCIC rules and regulations, including a review of its training records and validation procedures. See Ga. Comp. R. & Regs. r. 140-2-.07(2). If the Sheriff's Office violates GCIC Council Rules or network policies, then it is subject to a broad array of sanctions, including suspension or revocation of GCIC network access. Ga. Comp. R. & Regs. r. 140-2-19(1). Such disciplinary action may be instituted and implemented only by the GCIC.[45]

This review of Georgia law demonstrates not only an absence of county control, but also that sheriffs act for and are controlled by the State in their law enforcement function relating to criminal information on the CJIS systems in issue and in their training and supervision of their employees in that regard.

## V. SHERIFF IS NOT A COUNTY POLICYMAKER

### A. Absence of County Control

In Georgia, a county has no authority and control over the sheriff's law enforcement function. Clayton County does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what polices to adopt, or how to operate his office, much less how to record

---

[45]We address only the sanctions in the GCIC Council Rules. The Governor also has investigative and suspension powers over sheriffs for non-performance of their duties. See O.C.G.A. §15-16-26.

criminal information on, or remove it from, the CJIS systems involved in this case. Instead, the sheriff acts on behalf of the State in his function as a law enforcement officer and keeper of the peace in general and in relation to the CJIS systems in particular.[46]

The counties' lack of authority and control over sheriffs explains why counties have no § 1983 liability for their conduct. For example, if a rogue sheriff adopted an unconstitutional law enforcement policy or practice, the county has no authority to prevent or alter it and, in turn, incurs no § 1983 liability for it. A sheriff's policy or practice cannot be said to speak for the county because the county has no say about that policy or practice. As we have stated before, a county is liable under § 1983 only for acts for which the county is actually responsible. See Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc).

---

[46]Judge Anderson's concurring opinion more narrowly concludes that as "to the particular function at issue in this case, the Sheriff is acting on behalf of the state, and thus . . . Clayton County is not liable in this case." (Concurring Opinion, Anderson, J., p.47). Because no opinion obtained a majority of the Court, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (internal quotation marks and citation omitted); see also Redner v. Dean, 29 F.3d 1495, 1499 (11th Cir. 1994) ("When faced with a fragmented [Supreme] Court, we may distill the various opinions down to their narrowest grounds of concurrence to derive any binding precedent.").

Thus, we conclude today that the Clayton County Sheriff is not a county policymaker under § 1983 for his law enforcement conduct and policies regarding warrant information on the CJIS systems or the training and supervision of his employees in that regard. Accordingly, the defendant Clayton County has no § 1983 liability for the acts and policies of the sheriff and his employees in this case.

## B.    Prior Decisions

This Court has never before decided en banc whether Georgia sheriffs are policymakers for counties when performing their law enforcement function. We think that no panel actually has decided the question before this case. In prior § 1983 cases, we accepted official capacity suits against Georgia sheriffs as suits against their respective counties. See Alexander v. Fulton County, 207 F.3d 1303, 1322 n.14 (11th Cir. 2000) (stating "[p]laintiffs' suit against Sheriff Barrett in her official capacity is the functional equivalent of suing the County");[47] Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999) (stating that "[a]lthough [plaintiff]

---

[47]In Alexander, the plaintiff employees brought Title VII and § 1983 claims against the defendants Fulton County and Sheriff Barrett, individually and in her official capacity. 207 F.3d at 1313-14. After discussing whether Sheriff Barrett in her individual capacity was entitled to qualified immunity, this Court did not address whether the County or the Sheriff in her official capacity were liable under § 1983 "[b]ecause Title VII provide[d] an alternative basis for liability." See id. at 1321-22. In a footnote, we did note that "[p]laintiffs' suit against Sheriff Barrett in her official capacity is the functional equivalent of suing the County." Id. at 1322 n.14.

Wayne did not sue Dekalb County itself, his claim against Sheriff Jarvis in his official capacity is a claim against Dekalb County").[48] In these cases, we did not decide whether, under Georgia law, sheriffs are agents for the state or the counties, and it does not appear the parties raised the question. Further, in Vineyard v. County of Murray, 990 F.2d 1207 (11th Cir. 1993), the parties did not challenge on appeal the district court's jury instruction that the sheriff had authority to make policy for Murray County, Georgia, in the area of law enforcement. See id. at 1210. Thus, we did not decide the issue in Vineyard either.[49]

To the extent that Grech argues that our prior decisions decide that Georgia sheriffs are county policymakers under 42 U.S.C. § 1983, we reject that argument.

---

[48]In Wayne, the plaintiff inmate brought, inter alia, a § 1983 claim against the defendants Sheriff Jarvis in his official capacity and the Sheriff's Department based on their failures to provide adequate medical care and to protect him from other inmates. 197 F.3d at 1100-02. Dekalb County was not named as a defendant. We "proceed[ed] to address the merits of the district court's grant of summary judgment in favor of the County, which was properly sued in this case through the official capacity claim against the Sheriff." Id. at 1105. As to the Sheriff's Department, we observed that "[t]he district court noted that 'under Georgia law, the Dekalb County Sheriff's Department is not a legal entity that can be sued apart from the County.'" Id. But we concluded that "[r]egardless of whether that is correct, because Wayne's official capacity claim against Jarvis is a claim against the County, his claim against the Sheriff's Department of the County is redundant." Id.

[49] In Vineyard, the plaintiff, alleging that the sheriff's deputies beat him, sued Murray County and the sheriff in his official capacity, among others, under § 1983 because of inadequate policies of the supervision, training and disciplining of deputies, which caused the violation of the plaintiff's rights. 990 F.2d at 1209. After a jury verdict against the sheriff in his official capacity and Murray County, they asserted errors on appeal, but did not challenge this jury instruction as error. See id.

## VI. CONCLUSION

Accordingly, we affirm the district court's order granting summary judgment in favor of the defendant Clayton County.

**AFFIRMED.**

ANDERSON, Circuit Judge, concurring specially, in which BIRCH and WILSON, Circuit Judges, join:

I join Part I of Judge Barkett's concurring opinion. I agree that, with respect to the particular function at issue in this case, the Sheriff is acting on behalf of the state, and thus I can easily conclude that Clayton County is not liable in this case.

I also agree with Judge Barkett that the broader issue of the entity for whom a Georgia sheriff acts in his more general law enforcement functions is not an issue that must be addressed to resolve this case. If I am wrong, and the issue is before us, I believe that Judge Barkett's analysis of the Georgia Constitution, statutes and case law more accurately reflects the status into which Georgia law has placed the sheriff. I do not believe that the general delegations from the Georgia legislature and the general provisions of state law concerning qualifications, responsibilities, training, and salary are sufficient to convert a Georgia sheriff (in his general law enforcement functions) into a state officer or into a state agent performing a state function.[1] Rather, I think that a Georgia sheriff is an independent constitutional officer at the county level, a local governmental position which, with respect to many functions, is independent of the main branch of the county government headed by the county commission.

---

[1]As Judge Barkett points out, most of the general provisions relied upon in Judge Hull's opinion have parallels with respect to other clearly local governmental officials.

50

Although I agree with most of Judge Barkett's analysis in her Part II, I have some doubt about her implication that the county, and thus the county treasury which is controlled by the county commission, would be responsible for a judgment against the sheriff in a civil rights action. It is possible that this issue would not be controlled by the Georgia cases that hold that the county commission is not liable for judgments against a sheriff in a state law cause of action. But it is also possible that a plaintiff in a civil rights action against a Georgia sheriff would have more limited sources for the satisfaction of any judgment against the sheriff,[2] e.g., the sheriff's bond, or the insurance proceeds if the county commission had provided insurance coverage for the sheriff.[3] Because the county is not liable in any event in the instant case, I need not resolve issues of the sheriff's status with

---

[2]Indeed, this may be the more probable situation, in light of our precedent suggesting that a county cannot be liable under Section 1983 for the actions of an official who is not subject to the control of the county commission, which in turn controls the county fisc. See Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc); Turquitt v. Jefferson County, 137 F.3d 1285, 1292 (11th Cir. 1998) (en banc).

[3]A county may, by legislative act, waive the sheriff's sovereign immunity. See Seay v. Cleveland, 270 Ga. 64, 65, 508 S.E.2d 159 (1998) (holding, in claim arising out of allegedly wrongful sale of goods at sheriff's auction, that sheriff "may assert the defense of sovereign immunity and may be held liable in his official capacity for his deputies' negligence only to the extent the county has waived such sovereign immunity.") (emphasis added); Howard v. City of Columbus, 239 Ga. App. 399, 410, 521 S.E.2d 51 (1999) (citing Seay in case involving provision of health care to jail inmate, "the county sheriff in his official capacity is immune from tort liability in performing an official function and may be liable only to the extent that the county had waived sovereign immunity by statute."). As made clear in the aforementioned cases, the county's ability to waive the sheriff's immunity is not limited to automobile claims.

51

respect to functions other than the particular function involved in this case, that is, whether with respect to such other functions the sheriff is acting for the state, or the county, or as an independent constitutional officer at the county level. Nor need I resolve the issue of the county's liability when the sheriff is acting solely in his status as an independent constitutional officer at the county level, i.e., whether the county fisc, which is controlled only by the county commission, would be liable, or whether only the sheriff's bond or other assets under the sheriff's control would be liable. In my judgment, it is wiser to leave to another day issues which need not be decided to resolve the instant case.

BARKETT, Circuit Judge, concurring in result, in which TJOFLAT and KRAVITCH, Circuit Judges, join in full, and ANDERSON, BIRCH and WILSON, Circuit Judges, join in Part I:

In this case, Brian L. Grech sued Clayton County under 42 U.S.C. § 1983 for the actions of its sheriff in maintaining and recalling criminal warrants for a statewide computer database created and operated by the state of Georgia. The narrow question presented is whether the Clayton County Sheriff is a final policymaker for the county when performing these functions. I agree that the activities of this county sheriff in the particular area of maintaining and recalling criminal warrants for a state database did not implicate policymaking on behalf of the county. Thus, I concur that the county bears no liability for the actions of the sheriff here. As Judge Hull notes in her plurality opinion, this is the narrow holding of this case. See Plurality Opinion at 43, n.46.

No further determination about the status of Georgia sheriffs is necessary. However, the plurality ventures far beyond the discrete question raised in this case and suggests that Georgia sheriffs are state officers for law enforcement purposes generally, rather than just in their GCIC role. This erroneous characterization of Georgia law compels a response.

## I. DETERMINING FINAL POLICYMAKING AUTHORITY

The sole question before us is whether the sheriff acts as a final policymaker for Clayton County in maintaining the GCIC records required by the State of Georgia. A local government entity is liable under § 1983 for violations of federal law caused by the conduct of an individual who acts as a final policymaker (i.e., establishes the custom, policy, ordinance, regulation, or decision) "in a particular area or on a particular issue." McMillian v. Monroe County, 520 U.S. 781, 785 (1997); see also Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978). Whether a local government representative is a final policymaker in a particular area or on a particular issue for purposes of § 1983 is determined by examining state law. McMillian, 520 U.S. at 785; Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989); St. Louis v. Praprotnik, 485 U.S. 112 (1988).

Georgia's constitution, statutes, and case law designate sheriffs as county, not state, officials.[1] Nevertheless, although the sheriff generally acts as a county officer, the specific program at issue here charges the sheriff, as one of several local officers, with a well-defined record-keeping function on behalf of the state. Thus, the particular area involved in this case did not implicate a county area of responsibility. Indeed, although the parties before us agreed otherwise, and thus have not litigated the issue, the sheriff's duties in submitting information for the

_____

[1]See infra Part II.

54

state GCIC database suggest that the sheriff may not be a final policymaker at all with respect to this function, making his state or local affiliation irrelevant.[2] An official must have discretion in a particular area of law in order to exercise final policymaking authority in that area and may not be subject to significant review. This court has "squarely held that . . . '[f]inal policymaking authority over a particular subject area does not vest in an official whose decisions in the area are subject to meaningful administrative review.'" Denno ex rel. Denno v. School Bd., 218 F.3d 1267, 1276 (11th Cir. 2000) (quoting Scala v. City of Winter Park, 116 F.3d 1396, 1401 (11th Cir. 1997)). With regard to the GCIC, the sheriff appears to be simply a government official performing a ministerial task which, in this instance, he performed negligently.

## II. THE PLURALITY'S MISTAKEN DISCUSSION OF GEORGIA LAW

The foregoing inquiry is sufficient to resolve this case. However, because the plurality adds sweeping propositions not relevant to the case before us that completely misconstrue Georgia law, I am compelled to address the remainder of its opinion.

---

[2]For example, among other things, the state itself is charged with auditing the GCIC and has the authority to correct erroneous entries and impose sanctions for non-compliance. See Ga. Comp. R. & Regs. § 140-2-.19(1) (2001).

To determine whether an actor is a final policymaker under § 1983 we must examine state law, which originates with the state's constitution. The plurality correctly begins its general discussion of Georgia law by acknowledging that the Georgia Constitution designates sheriffs as <u>county</u>, not state, officers. However, the plurality then disregards this designation with the pronouncement that "we must focus on control, not labels."[3] With these few words, the plurality illustrates its misapprehension of this case.

Initially, the plurality asserts a false justification for looking beyond the plain language of the Georgia Constitution based on a badly distorted reference to the <u>McMillian</u> Court's use of the term "labeling." This misstatement of <u>McMillian</u> does not support the plurality's substitution of its own views for the express directive of the Georgia Constitution.[4]

The plurality then compounds this error by drawing two mistaken inferences regarding the concept of control, upon which its analysis relies so heavily. First, the plurality reasons that because the Georgia Constitution permits the legislature to enact general rules governing some aspects of the sheriff's office, the sheriff must be a state officer. But, as I discuss more fully below, there is no significant

---

[3]Plurality Opinion at 12.

[4]<u>See infra</u> Part II, B.

56

distinction in kind between Georgia laws regulating the responsibilities, qualifications, training, and salary of sheriffs and parallel provisions of the state's code which regulate the same attributes with respect to the quintessential county officers: county commissioners. If any local officeholder whose powers and privileges are defined in some sense by state law thereby becomes a state agent, there could be no county officers, since all local government is a creature of state authority.[5]

Second, the plurality erroneously infers that sheriffs are state officers because Georgia law provides that they are not employees of the board of county commissioners. It is true that sheriffs are not employees of the county commission, but this is completely irrelevant. Georgia has not established a monolithic structure of county government with the county commission at its head, but rather has chosen to establish several independent county offices which share equally in the responsibilities and powers of county governance. No constitutional county officer is "employed" by any other. Therefore, the mere fact that sheriffs are not employed by the county commission neither has any bearing on whether sheriffs are state officers, nor leads to that erroneous conclusion.[6] I

---

[5]See infra Part II, C, 1.

[6]See infra Part II, C, 2.

address each of the plurality's arguments after first setting out an appropriate constitutional analysis under Georgia law.

## A. Sheriffs in the Georgia Constitution

Georgia's highest law is unequivocal in its designation of sheriffs as county, not state, officials. It specifically enumerates sheriffs under the heading, "County Officers; Election; Term; Compensation." Ga. Const. art. IX, § 1, para. III(a). Sheriffs appear in Article IX, which addresses "Counties and Municipal Corporations," and not Article V, which addresses the state's "Executive Branch." Hence, sheriffs' status as county officers is clearly reflected in the very organization of Georgia's fundamental political charter.

The Supreme Court underscored the importance of state constitutions in McMillian. In McMillian, 520 U.S. at 795, the Court relied most heavily on the Alabama Constitution in determining that sheriffs in that state had become state officials through a protracted struggle in the late nineteenth century to prevent renegade local sheriffs from abusing their office. As the Court described, the history of Alabama sheriffs was unique in that it had left imprints on several versions of the state's evolving constitution, each of which manifested a stronger resolve to discipline sheriffs who tolerated or encouraged lynchings. See id. at 787-89. As early as 1875, the Court noted, a new Alabama Constitution included

58

sheriffs for the first time among the officials comprising the "state executive department." Id. at 787 (internal quotation marks omitted). Two amendments subsequently incorporated in the 1901 Alabama Constitution went still further in transforming sheriffs from county into state officials. First, the constitution's framers made it an impeachable offense for sheriffs to allow lynch mobs to abduct and kill prisoners. Second, they authorized the governor to initiate impeachment proceedings in the state supreme court instead of local county courts. In making these changes, the framers aimed to remedy the "failure of county courts to punish sheriffs for neglect of duty," in part by "augment[ing] the power of the Governor." Id. at 788 (quoting Parker v. Amerson, 519 So. 2d 442, 443-444 (Ala. 1987)).

It was this unique constitutional history, underscoring the language of the constitution, that the Supreme Court found decisive in its determination that Alabama sheriffs today act as state rather than county officials when engaged in the law enforcement functions of investigating crimes and collecting evidence for trial. At no point, however, did the McMillian Court suggest that the history it found compelling in Alabama was likely to be duplicated in other states. Indeed, the Court emphasized that variation among different states' sheriffs could be expected in light of states' "wide authority to set up their state and local governments as they wish." Id. at 795. "[T]here is no inconsistency created by

59

court decisions that declare sheriffs to be county officers in one State, and not in another" because "both the role of sheriffs and the importance of counties vary from State to State." Id.

The Supreme Court's remarks regarding states' authority to provide for sheriffs of different stripes must be borne in mind when turning from the Alabama to the Georgia Constitution. Several important differences between the two state constitutions are pertinent. First, the language of the Georgia Constitution, in expressly including sheriffs under the heading "County Officers," provides a plainer answer to the question of sheriffs' state or local status than do counterpart provisions of the Alabama Constitution. Second, whereas the Alabama Constitution includes sheriffs within an article addressing the executive branch of the state government, Georgia's constitution discusses sheriffs in an article addressing local government. Third, there is a marked contrast between the evolution of the office of sheriff in the Alabama Constitution and the consistency with which Georgia has provided for sheriffs to act as county officials. As the McMillian Court explained, sheriffs' designation as state officers in the Alabama Constitution emerged out of a sustained effort to remedy their previous dereliction of duty by making them directly accountable to the governor. Georgia's constitutional history, by contrast, reveals only an untempered resolve to enshrine

60

sheriffs' status as county officers and their consequent independence from state

lawmakers.

In writing the present Georgia Constitution, the drafters undertook to

eliminate an ambiguity created by previous charters' failure to designate exactly

which county officers were beyond the state legislature's power to abolish.[7]

_____

[7]The constitution's drafters spoke directly to the ambiguity which the 1983 constitution aimed to rectify. Members of the subcommittee charged with proposing pertinent revisions had the following colloquy regarding the absence of any systematic enumeration of county officers in the constitution they set out to amend:

CHAIRMAN COVERDELL: Just take the sheriff, we've got him enumerated.
MR. HILL: He is the only one.
MR. BURGESS: He is the only one.
MR. HENRY: You've got the tax receiver, tax collector, treasurer.
CHAIRMAN COVERDELL: Are they not enumerated? I thought they were.
MR. HILL: The county treasurer and the tax receiver, tax collector are mentioned in Paragraph 6 which authorizes the General Assembly to consolidate the offices of treasurer and tax receiver and tax collector into the new office of tax commissioner.
REPRESENTATIVE EVANS: What about the clerk? That would be another article?
MR. HILL: The clerk of court is not mentioned in the constitution specifically. He is mentioned by reference in the sense that it now states that the county officers shall be elected, and by judicial decision it has been determined that clerks of superior court and about six others –
REPRESENTATIVE EVANS: How about probate court?
MR. HILL: Yes, about six others – I forget who all they are.
MR. CARLYLE: All of those are by judicial decision because the county officers in Paragraph 8 doesn't list who county officers are. It may list county commissioners up here under Paragraph 6, but it doesn't say that they are county officers; the court has said that. The same way with county treasurer.

See Select Committee on Constitutional Revision: Meetings of the Committee To Revise Article IX, vol. 1, at 69 (Ga. Jul. 23, 1980) (transcript of subcommittee meeting).

In light of the confusion created by the absence of a systematic enumeration of county officers, the drafters of Georgia's present constitution undertook to fill this gap. See id. at 72-73 ("Mr Hill: I think it would be very helpful to all concerned to have a clear statement of who the county constitutional officers are. . . . [T]he fact that there are certain recognized elected county constitutional officers at the present time and we don't know who they are by the constitution,

Toward this end, they specifically included sheriffs among the four county officers named in a new paragraph of Article IX. The framers clearly intended in doing so to make a sheriff's constitutional status as a county officer inalterable by the Georgia General Assembly.[8]

---

it's something we can rectify. . . ."). As ultimately adopted, Article IX, Section I, Paragraph III of the Georgia Constitution names as county officers "[t]he clerk of the superior court, judge of the probate court, sheriff, tax receiver, tax collector, and tax commissioner, where such office has replaced the tax receiver and tax collector."

[8]The drafters resoundingly rejected a suggestion that would have given the Georgia legislature power to decide whether the sheriff's office would exist and by whom it could be filled. The following exchange amply demonstrates the drafters' presumption that the office of sheriff would be independent of the General Assembly:

> MS. GREENBERG: Could we possibly change this radically by making it very flexible and providing that the General Assembly shall provide for county officials and provide that they either be elected or appointed, and also the General Assembly shall provide for their duties and their terms of office and their eligibility and their qualifications, just a very flexible kind of statement in the constitution and take away mention of all these other officers, and that would also cover consolidated governments, counties and cities.
> MR. CARLYLE: I'm sure you could do that, but the problem is it's –
> MR. FINDLEY: It's a wild-eyed idea.
> CHAIRMAN COVERDELL: That would have to come under wild-eyed schemes I'm afraid.
> REPRESENTATIVE EVANS: That has that snowball's chance of getting through.

Id. at 71.

The plurality opinion appears to read my discussion here as an argument that the plain language of Georgia's constitution makes the "powers and duties of the constitutional sheriff's office" inalterable by the Georgia legislature. Plurality Opinion at 15 n.13. I do not suggest that Georgia's General Assembly may not regulate the office of sheriff. It may, and it does, just as it regulates the office of county commissioner. See infra Part II, C. The point here is that the constitutional framers specifically rejected the opportunity to commit the sheriff's office to the General Assembly's authority and instead chose to make it a constitutional one, thus limiting the legislature's ability to make changes in the sheriff's status.

Furthermore, Georgia courts had long recognized sheriffs as county officers when the Georgia Constitution took its present form, and in constitutionalizing this status, the framers clearly understood themselves to be formalizing existing law rather than breaking new ground.[9] As early as 1895, Georgia's supreme court assumed that sheriffs were county officers. Massenburg v. Bibb County Comm'rs, 23 S.E. 998, 999 (Ga. 1895). In Truesdel v. Freeney, 197 S.E. 783, 786 (Ga. 1938), the Georgia Supreme Court addressed the matter more explicitly, holding that the "tax-collector and tax-receiver and the sheriff function with reference to State matters, as well as county matters; but they are not regarded as State

---

[9]The following exchange shows the drafters attending to judicial precedent regarding the identity of county officers:

> REPRESENTATIVE EVANS:. . . are we going to name the constitutional officers?
> MR HILL: Yes.
> CHAIRMAN COVERDELL: They would be named.
> REPRESENTATIVE EVANS: Which ones are we going to name?
> MR. HILL: The ones that have been judicially determined to be constitutional officers. There are seven, and I don't know – I can't list them off the top of my head.
> MR. FINDLEY: I can tick them off. Sheriff, clerk of the superior court, tax collector, tax receiver or tax commissioner, judge of the probate court, treasurer – did I mention him? – coroner and surveyor. You always forget those, but they're in there too.

Id. at 75. Although the drafters never questioned the propriety of including sheriffs in their list of county officers, not all of the office holders they discussed were ultimately included in the enumeration that now appears at Article IX, Section I, Paragraph III. Omitted were county coroners, county surveyors, and treasurers. Clearly, drafters of Georgia's present constitution made a deliberate choice to preserve sheriffs' status as one of a select group of county officers formally recognized by the state's constitution.

officers." Truesdel, 197 S.E. at 786.[10]  Truesdel has since become a foundational

case for determining whether a public official is a state or county officer.  In Best

v. State, 136 S.E.2d 496, 497 (Ga. 1964), for example, the Georgia Court of

Appeals cited Truesdel's holding that sheriffs need not be "regarded as State

officers" even though they sometimes act on "state matters."  Best, 136 S.E.2d at

497.  See also Fortson v. Week, 208 S.E.2d 68, 71 (Ga. 1974); Wood v. State, 134

S.E.2d 8, 9 (Ga. 1963).[11]  Not only is the Georgia constitutional language,

structure and history clear, making further consideration of its sheriffs' status

unnecessary, there are at least thirty-one Georgia cases which specifically

[10]The plurality opinion seeks to distinguish Truesdel because the main issue facing the Georgia Supreme Court concerned a municipal clerk.  However, the Truesdel holding is actually quite relevant for our purposes.  The question in Truesdel was whether a municipal clerk was a local officer or a state officer.  The court found the clerk to be a local officer, relying on factors similar to those we must consider under McMillian, such as whether the county or state paid his salary and whether he reported to any state officials.  It treated the sheriff as a touchstone of local governing authority by reasoning that those attributes which municipal clerks shared with sheriffs weighed in favor of finding clerks to be local officials.  In addition to the sheriff, the court referenced the county status of the probate judge, the clerk of the superior court, and the tax officials – the very officers with whom the sheriff is now listed in article IX of the Georgia Constitution.  Compare Truesdel, 197 S.E. at 786 (Ga. 1938) with Ga. Const. Art. IX, Sect. I., Par. III.

[11]That the status of sheriffs as county officers is more than a formal designation is clear from cases in which this status controlled the outcome.  In Carter v. Veal, 155 S.E. 64 (Ga. App. 1930), the Georgia Court of Appeals held that a person could not simultaneously serve as county coroner and deputy sheriff under Section 45-2-2 of the Georgia Code, which forbids holding more than one county office at a time.  This rule's application to sheriffs was reaffirmed in Black v. Catoosa County Sch. Dist., 445 S.E.2d 340 (Ga. App. 1994) (enjoining deputy sheriff from serving as member of county school board).  The rule has also been recognized in a series of opinions of the Georgia Attorney General.  See 1997 Op. Ga. Att'y Gen. 18; 1965-66 Op. Ga. Att'y Gen. 129-30; 1958-59 Op. Ga. Att'y Gen. 29-30.

recognize sheriffs as officers of the county.[12]  Far from marking a break with the

tradition reflected in these cases, the most recent constitutional revision elevated

the doctrinal consensus into an organizing principle of the state's most

fundamental political charter.  The present constitution's language emerged from,

and in turn restated, well-settled state law.

### B.  Georgia's Constitutional Designation Cannot Be Dismissed as a Mere "Label"

The plurality resists both the plain language and the structure of the Georgia

Constitution, as well as Supreme Court precedent, by relying on a phrase in

McMillian which it misunderstands and which does not apply to this case.

Specifically, it states that "McMillian teaches that state law cannot answer the §

---

[12]This figure includes twenty-three cases not discussed elsewhere in this opinion where the sheriff's county-officer status plays a role in the decision:  See Cameron v. Lang, 549 S.E.2d 341 (Ga. 2001); Seay v. Cleveland, 508 S.E.2d 159 (Ga. 1998); Atlanta Journal v. Clarke, 497 S.E.2d 358 (Ga. 1998); In re Inquiry Concerning a Judge, 454 S.E.2d 780, 783 (Ga. 1995); Hart v. Madden, 349 S.E.2d 737, 738 (Ga. 1986); Southeastern Newspapers Corp. v. Griffin, 267 S.E.2d 21 (Ga. 1980) (citing two others); Griffin v. Chatham County, 261 S.E.2d 570 (Ga. 1979) (county commission may contract on behalf of sheriff); Lovett v. Bussell, 249 S.E.2d 86 (Ga. 1978); Wolfe v. Huff, 205 S.E.2d 254 (Ga. 1974); Warren, 202 S.E.2d at 409; Kiker v. Worley, 157 S.E.2d 745, 746 (Ga. 1967); Reed v. Southland Publishing Co., 150 S.E.2d 817, 817 (Ga. 1966); Lewis v. Gay, 109 S.E.2d 268, 275 (Ga. 1959); Davis v. Logan, 57 S.E.2d 568, 569 (Ga. 1950); Collins v. Mills, 30 S.E.2d 866, 866 (Ga. 1944); Seaboard A. L. R. Co. v. Wright, 122 S.E. 35, 36 (Ga. 1924); Rose v. State, 33 S.E. 439 (Ga. 1899); Brady v. Joiner, 28 S.E. 679 (Ga. 1897); Haralson County v. Kimball, 533 S.E.2d 762 (Ga. App. 2000); Malcom v. Newton County, 535 S.E.2d 8 (Ga. App. 2000); Mayo v. Fulton County, 470 S.E.2d 258 (Ga. App. 1996); Landis v. Rockdale County, 427 S.E.2d 286 (Ga. App. 1992); Feise v. Cherokee County, 427 S.E.2d 294 (Ga. App. 1992) (examining the county's liability when the tortfeasor was a deputy sheriff).

1983 policymaker question by 'simply labeling' an official as a county or state official" and, therefore, we "must focus on control" over the official.[13] But the plurality takes this reference to "simply labeling" an official completely out of context and, in so doing, forsakes Georgia law's clearest and highest authority: the Georgia Constitution.

In McMillian, the Supreme Court was confronted with the unusual situation where a state constitution explicitly designated sheriffs as state, not county, officers. McMillian, 520 U.S. at 786. The Court was concerned with the possibility that a state might improperly shield counties from § 1983 liability by deliberately mislabeling what were really county officials as state officials. Accordingly, the Court wanted to ensure that the Alabama Constitution's labeling of sheriffs as state officers was not simply a device for avoiding liability by masking what were, in reality, local government representatives. Id. at 786, 796.

This concern, however, is irrelevant where (as here) there is no contention that the state has mislabeled an officer to avoid liability. Indeed, no possible incentive exists for states to designate what are really state officials as county officials, since such a mis-designation would actually create liability that would not otherwise attach. Certainly, when there is evidence that a state is attempting

---

[13]Plurality Opinion at 9.

66

"to insulate counties and municipalities from <u>Monell</u> liability by change-the-label devices," <u>id.</u> at 805 (Ginsburg, J., dissenting), <u>McMillian</u> instructs courts to look beyond where the law "purports," <u>Praprotnik</u>, 485 U.S. at 126, to locate final policymaking authority. But this rationale does not apply in the converse situation, such as the one presented in this case, where the "label" serves no purpose of obfuscation or insulation.[14]

There is no reason to go beyond the constitution in Georgia, where the constitutional language <u>establishes</u> the basis for local liability. Thus, the <u>McMillian</u> Court's concern over (mis)labeling is inapposite to this case.[15]

---

[14]The Court's concern with change-the-label devices traces to <u>Praprotnik</u>, where Justice O'Connor explained that "whatever analysis is used to identify municipal policymakers, egregious attempts by local government to insulate themselves from liability for unconstitutional policies are precluded . . . ." <u>Praprotnik</u>, 485 U.S. at 127 (internal citations omitted). In <u>McMillian v. Johnson</u>, 88 F.3d 1573 (11th Cir. 1996), <u>aff'd sub nom</u> <u>McMillian</u>, 520 U.S. at 781, we also addressed the labeling concern but emphasized that a state constitution's designation of a sheriff as a county or state official should not be cast aside lightly:

> We recognize that a sheriff's designation as a state official is not dispositive, but such a designation is relevant to whether a sheriff exercises state or county power. McMillian would have us disregard Alabama's decision to make a sheriff a state official, <u>characterizing it as nothing more than a label. Instead, we heed the Supreme Court's admonition that federal courts respect the way a state chooses to structure its government</u>.

<u>McMillian</u>, 88 F. 3d at 1580-81 (emphasis added). The plurality opinion cites the first part of this passage but ignores the underlined warning. Plurality Opinion at 9 n.7.

[15]The plurality characterizes my emphasis on Georgia's constitutional text as a rejection of "the relevance of <u>McMillian's</u> functional and control analysis to this case." Plurality Opinion at 12 n.10. While I do believe we must give strong deference to the state constitution's language, the plurality's statement ignores my thorough functional analysis of Georgia's constitutional history, case law, and code. The plurality opinion also misreads the Supreme Court's treatment

## C. The Plurality's Mistaken Conception of
## Georgia Sheriffs as State Actors

Because the Georgia Constitution's language, structure, and history plainly demonstrate that its framers meant precisely what they said in "labeling" Georgia sheriffs as "county officers," we should accord this designation its plain meaning. The plurality nonetheless casts aside this most fundamental state-law authority in search of some other basis to conclude that the sheriff acts for the state. Specifically, the plurality ignores Georgia's express constitutional language on two grounds: (1) that sheriffs are subject to regulation by the state government; and (2) that sheriffs are not "employees" of the county commission.[16]  Neither of these observations demonstrate that sheriffs are state officers.

### 1. Sheriffs' Regulation Under Georgia Law

---

of Alabama law.  It is true that in McMillian the Supreme Court declined to give controlling force to certain Alabama statutory provisions tending to suggest that the sheriff might be a county officer, but it did so because "in light of the Alabama Supreme Court's conclusion that sheriffs are not state officials according to the State Constitution . . . we think any contrary implication in the code is entitled to little weight."  McMillian, 520 U.S. at 792 n.7.  The Court's privileging of the Alabama Constitution over Alabama statutes remained firm despite its acknowledgment that some of these statutory provisions were "important" and that "some evidence in Alabama law" supported the view that sheriffs were county officers.  Id. at 791, 793.  By contrast, the plurality's justification for discarding the Georgia Constitution's unequivocal designation of sheriffs as county officers places undue weight on fragmentary and peripheral provisions of the Georgia Code.

[16]See Plurality Opinion at 12-13.

Subjecting an official to state-law regulation does not turn that official into a state agent. The plurality opinion overrides the clear language and structure of the Georgia Constitution on the basis of a few scattered provisions of Georgia law which are, in fact, either neutral with respect to our inquiry or actually supportive of the view that sheriffs are county officers.[17]

For example, the plurality argues that because Georgia law gives sheriffs the authority to make arrests for traffic violations outside their counties, they must be state officers. But the same provision that authorizes sheriffs to make these arrests outside their counties, see Ga. Code Ann § 40-13-30 (2002), grants county and city police officers analogous powers. See, e.g., State v. Heredia, 555 S.E.2d 91 (Ga. App. 2001) (county police); Poss v. State, 305 S.E.2d 884 (Ga. App. 1983) (city police).[18] Surely this grant of power does not make a county or city policeman a state officer.

---

[17]The plurality cites Hannah v. State, 212 Ga. 313 (1956), seemingly suggesting that the common law origins of the Georgia sheriff's office make him a state officer. It is worth noting that Georgia sheriffs themselves, speaking through the Georgia Sheriffs' Association, see their common law heritage differently:

> In Georgia, the Sheriff is both a constitutional and a county officer. The constitutionality of the office derives primarily from English Common Law. The status as a county office is drawn from a number of general constitutional provisions relating to the office.

Georgia Sheriffs' Association web cite, at www.georgiasheriffs.org/offsheriff.html (2003).

[18]The sheriff has discretion also to transfer prisoners to safer jails outside the county, but only to other county jails not state prisons.

The plurality opinion's reliance on Georgia sheriffs' suspension procedures as evidence of state-officer status is also misplaced. It is true that the Governor has some role in the suspension of sheriffs.[19] However, the plurality opinion fails to explain why it focuses on the governor's power to suspend the sheriff rather than the governor's lack of power to remove the sheriff. In McMillian, the Supreme Court was impressed by the State of Alabama's amendment of its constitution to augment the governor's power to remove sheriffs, see McMillian, 520 U.S. at 788, but the Georgia provisions cited by the plurality are hardly of comparable character. Indeed, these provisions not only grant the governor no removal power, but also forbid the governor from suspending a sheriff for longer than ninety days. See Ga. Code Ann. § 15-16-26(c). The governor may not even suspend the sheriff without appointing and receiving the affirmative recommendation of an investigatory committee. See Ga. Code Ann. § 15-16-26(a), (c). Outside of this process, "the Governor and the Attorney General can take no official action against a sheriff unless there has been a criminal indictment." Gipson v. Bowers, 434 S.E.2d 490, 491 (Ga. 1993).[20] The

---

[19]Plurality Opinion at 20-21 (citing Ga. Code Ann. § 15-16-26 (2002)).

[20]The plurality suggests that I misinterpret Gipson by failing to read it in the context of the limited suspension power granted the governor by Ga. Code Ann. § 15-16-26. While the state court in Gipson may have spoken somewhat broadly in stating that the governor "can take no action" against a sheriff absent a criminal indictment, Gipson remains indisputable authority

70

governor's real but limited suspension power and his lack of removal power are as readily viewed as evidence of a lack of control as of control.[21]

Likewise, the plurality's discussion of the county commission's direct control over county police departments is irrelevant to this case.[22]  Just because a county is responsible for one entity does not preclude its responsibility for another.  Accordingly, the existence of county police departments (whose officers' minimum qualifications are set by Georgia state law and <u>not</u> by the county commission) has no bearing on whether the sheriff represents the county.[23]  If it did, the sheriff could not be a state officer either, because the state also has its own police force.  Ga. Code Ann. § 35-2-30, <u>et seq.</u> (2002).  The statute authorizing

---

for the governor's lack of any removal power.  The plurality fails to come to terms with this aspect of Georgia law, preferring instead to treat the governor's suspension power as the only relevant consideration in the assessment of gubernatorial "control" over sheriffs.

[21]Moreover, Georgia courts have made clear that a sheriff's removal from office is governed by his status as a county officer under state law.  <u>See Cole v. Holland</u>, 132 S.E.2d 657, 660 (Ga. 1963) (stating that a sheriff's removal from office is governed by "the constitutional provision which declares that a county officer shall be removed for malpractice in office"); <u>Walker v. Devinney</u>, 149 S.E.2d 657, 658 (Ga. 1966) (holding that a statute punishing bribery of local officials applied to county sheriffs because "[t]he Sheriff of Fayette County is an officer of a political subdivision of this State"); <u>Best</u>, 136 S.E.2d at 496-97 (holding that a sheriff could not be indicted under a code section governing the bribery of "any. . . officer of this State").

[22]<u>See</u> Plurality Opinion at 26.

[23]<u>See</u> Plurality Opinion at 26 (citing Ga. Code Ann. § 36-8-1, <u>et seq.</u>).

county police departments does not aid us one way or another in answering the present inquiry.

Similarly, the plurality gains no ground by showing that deputy sheriffs are neither employees of the county commission nor automatically subject to the county civil service system.[24] There is no question that deputy sheriffs are not employees of the county commission. They are instead employees of an independent county officer: the sheriff. The plurality cites five cases holding that the county is not liable for the torts of deputy sheriffs performing law enforcement functions,[25] but as the plurality concedes,[26] three of these cases involved respondeat superior liability, which is not applicable in this context.[27] The fourth case, Chadwick v. Stewart, 94 S.E.2d 502 (Ga. App.1956), says nothing about county liability at all. The final case cited, Wayne County Bd. of Comm'rs v. Warren, 223 S.E.2d 133 (Ga. 1976), is inapplicable, primarily because it has been overruled by Monell.[28] Further, the fact that deputy sheriffs are not automatically

_____

[24]Plurality Opinion at 21-25.

[25]Plurality Opinion at 22-24.

[26]See Plurality Opinion at 23 n.21.

[27]See Plurality Opinion at 11.

[28]The plurality's treatment of Wayne is misguided for two major reasons. First, though the party at issue in Wayne was a sheriff, the actual holding and the cases the court cited concerned all county officers qua county officers. See, e.g., id. at 134 ("Except for the payment

72

covered under the county civil service system is of no import;[29] they are not

covered by the state civil service system either.  See Ga. Code Ann. § 45-20-1 et

seq. (2002).  That deputies may be covered by the county civil service system at

all[30] (and not the state system) only strengthens the conclusion that their

government affiliation is local.  These two showings do not advance the idea that

sheriffs are state officers.

The plurality's state-law sovereign immunity argument fares no better.[31]  As

the plurality concedes, this doctrine simply does not control our analysis under §

of the premiums above mentioned, a county has no liability in connection with the violations of
the civil rights of any person by a county officer."); Bailey v. Fulton County, 36 S.E. 596, 596
(Ga. 1900) ("The principle [that a municipal corporation is not liable for the acts of its officers] is
obviously applicable to like torts committed by county officials.").  Wayne did not decide who is
a county officer, but rather when a county is liable for the torts of officials whose status as county
officers was not disputed.  If Wayne supports the contention that a sheriff is a state officer, it
equally supports the contention that all Georgia county officers are, by definition, state officers.
Second, Wayne's holding that counties are not liable for the civil rights violations of their
officers is in direct conflict with Monell.  This is not surprising, because the Georgia Supreme
Court decided Wayne in 1976, two years before Monell.  Under the previous doctrine of Monroe
v. Pape, 365 U.S. 167 (1961), local governments could not be sued for the constitutional torts of
their officers under § 1983.  Id. at 187-93.  To the extent that Wayne's holding applies to federal
causes of action, it would have been overruled by Monell, which would explain why no cases
since have relied on it for this proposition.  And to the extent that Wayne's holding applies to
state law claims, it is no more than a statement of Georgia's state sovereign immunity law – that
local governments can only be sued when the General Assembly has waived the local entities'
sovereign immunity – as stated in Gilbert v. Richardson, 452 S.E.2d 476, 479 n.4 (Ga. 1994), and
its progeny.

[29]See Plurality Opinion at 24-25.

[30]See Ga. Const. Art. IX, Sec. I, Par. IV; Wayne County v. Herrin, 437 S.E.2d 793 (Ga.
App. 1993).

[31]Plurality Opinion at 28-31.

73

1983.[32]  It is no more relevant than any other piece of Georgia law from which we can glean evidence of the sheriff's state or county affiliation.  Moreover, to the extent the state sovereign immunity doctrine can aid us by analogy, its application in Georgia law supports the position that the sheriff is a county officer.  As is the case with claims against county commissioners, it is the <u>county's</u> immunity that controls when the sheriff is sued, and it is the <u>county</u> that defends the sheriff.[33]

---

[32]<u>See</u> Plurality Opinion at 28 n.26 ("[S]tate sovereign immunity has no application in federal court in § 1983 cases.")

[33]The plurality's response to this argument misunderstands my point.  I am not concerned with whether any entity, be it county or sheriff, has or has not waived its state-law sovereign immunity.  These are state-law issues, and we are ruling on a federal cause of action.  The relevant point is that Georgia law accords sovereign immunity to the sheriff in his capacity as a representative of the <u>county</u>.  In <u>Gilbert</u>, the Georgia Supreme Court allowed the sheriff to assert the defense of state-law sovereign immunity because, and only because, he was sued as a representative of the county.  <u>See Gilbert v. Richardson</u>, 452 S.E.2d 476, 484 (Ga.1994) ("Because he is being sued in his official capacity, [Sheriff Millard] is entitled to the benefit of Walker County's sovereign immunity defense.").  The plurality attempts to circumvent this language and argues that the cases <u>Cameron v. Lang</u>, 549 S.E.2d 341 (Ga. 2001),  <u>Seay v. Cleveland</u>, 508 S.E.2d 159 (Ga. 1998), and <u>Cantrell v. Thurman</u>, 499 S.E.2d 416 (Ga. App. 1998) demonstrate that sheriffs draw their state-law immunity from a source other than the county.  <u>See</u> Plurality Opinion at 29-31.  However, <u>Gilbert</u> is the lead case in this line of precedent, and it makes clear that sheriffs are immune from Georgia causes of action only as beneficiaries of their counties' immunity.  The fact that <u>Gilbert</u> and <u>Cameron</u> involve motor vehicle insurance does not change this analysis.  <u>Seay</u> does not change it either, because the <u>Seay</u> court explicitly based its finding of immunity on <u>Gilbert</u>.  <u>Cantrell v. Thurman</u>, 499 S.E.2d 416 (Ga. App. 1998) also does not change the analysis, because the immunity provision to which it refers is considered "a constitutional reservation of sovereign immunity to the counties of the State of Georgia" as well as to the state itself.  <u>Toombs County v. O'Neal</u>, 330 S.E.2d 95, 96 (Ga. 1985).  Moreover, it is noteworthy that none of these decisions even consider the possibility that the plaintiffs had sued the wrong government for the sheriffs' actions.  In all of these cases, if the state, rather than the counties, were the real party in interest, the plaintiffs would have had to pursue their claims under the State Tort Claims Act, Ga. Code Ann. § 50-21-22, <u>et seq.</u>, which covers "the State of Georgia and any of its officers, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions," but not "counties,

74

See, e.g. Gilbert v. Richardson, 452 S.E.2d 476, 479 n.4 (Ga. 1994) ("Although Walker County is not a named defendant in this action, Millard was sued in his capacity as Walker County sheriff. Accordingly, the Gilberts' claims are, in essence, claims against Walker County and Millard may raise any defense available to the county, including sovereign immunity.");[34] Logue v. Wright, 392 S.E.2d 235 (Ga. 1990) (holding that it is county liability defenses which apply to actions against sheriffs); Haywood v. Hughes, 235 S.E.2d 2 (Ga. 1977) (holding that the statute which is now Ga. Code Ann. § 45-9-21 (2002) authorized Georgia counties to pay for their sheriffs' legal costs in civil rights suits against the sheriffs);[35] Haralson County v. Kimball, 533 S.E.2d 762 (Ga. App. 2000) (holding that Ga. Code Ann. § 45-9-21(2), which allows a "county officer" to hire his own attorney at the county's expense when the county attorney has a conflict of

---

municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities." Ga. Code Ann. § 50-21-22(5).

[34]The Georgia Supreme Court relied on the same constitutional provision applied in Gilbert, and on Gilbert itself, to extend state-law sovereign immunity to county commissioners in Woodard v. Laurens County, 456 S.E.2d 581, 582 (Ga. 1995).

[35]The plurality's attempt to distinguish Haywood fails. Haywood concerned a statute now found at Ga. Code Ann. § 45-9-21, which allows counties and other local governmental entities to set aside funds to defend their own officers. The county could not have relied on this statute to justify paying for the sheriff's defense were the sheriff not one of the county's officers. Further, the statute specifically states that the term "county officer" as used therein "means the sheriff" and the other three constitutional county officers. Ga. Code Ann. § 45-9-21(e)(1).

75

interest, applies to sheriffs). State-law sovereign immunity is inapplicable to our inquiry and in no way suggests that sheriffs are state officers.

The plurality's final remaining contention – that because sheriffs are subject to various state rules, this form of "control" renders them state officers – proves far too much. In fact, a consistent application of the plurality opinion's approach would effectively transform not just Georgia's sheriffs, but all of its local governmental authorities into state officers. This would obliterate the distinction which underlies both Monell and McMillian.

Even assuming arguendo that this approach was a valid one, every regulation (or "control") that the plurality cites to show that sheriffs are state officers has a parallel provision that applies to county commissioners, who are indisputably county officers. For example, while it is true that the Georgia Code establishes certain uniform powers and duties for sheriffs throughout the state, see Ga. Code Ann. § 15-16-10 (2001 & 2002 Supp.), a parallel state-law provision establishes the "powers and duties" of county commissioners. See Ga. Code Ann. § 36-5-22.1(a) (2000). Likewise, in addition to requiring sheriffs to complete a training course administered by the Georgia Sheriffs' Association, see Ga. Code Ann. § 15-16-3(b) (2001), the state prescribes comparable training for county commissioners, all of whom must complete at least eighteen hours of training on

matters pertaining to the administration of county governments. See Ga. Code Ann. § 36-20-4 (2000). Similarly, the Georgia Code establishes a minimum salary for sheriffs, see Ga. Code Ann. § 15-16-20(a)(1) (2001),[36] but also contains an analogous provision limiting the salaries of county commissioners. See Ga. Code Ann. §§ 36-5-24(b)(1) (2002 Supp.); 36-1-11.1 (2000) (limiting commissioners' power to raise their salaries and pensions). Finally, Georgia's establishment of minimum qualifications for sheriffs must be viewed in concert with similar minimum qualifications for would-be county commissioners. See Lucas v. Woodward, 243 S.E.2d 28, 31 (Ga. 1978) (holding commissioners subject to the constitutional provision setting minimum requirements for all county officers, including sheriffs). In sum, while Georgia statutes outline sheriffs' duties, salaries, accountability, and minimum qualifications, the existence of parallel legislation regarding county commissioners militates strongly against construing these provisions as an indication of state control.

### 2. Sheriffs Are Independent Constitutional County Officers, Not Employees of the County Commission

In addition to its misunderstanding of the import of state regulation, the plurality misinterprets the sheriff's relationship with the county commission by

---

[36]However, in Georgia, unlike in Alabama, the county can supplement this base salary. Ga. Code Ann. § 15-16–20(a)(3) (2001).

contending that § 1983 liability depends upon the subservience of one constitutional officer to another.  Georgia's sheriffs are not employees of the County Commission.  Nor are they employees of the state.  In fact, they are not "employees" at all.  They are independent constitutional officers.[37]

The question here is not whether a <u>county commission</u> controls the sheriff's office but whether the <u>county</u> controls the sheriff's office.  The distinction is important, because  when the sheriff exercises his own discretionary authority he is, by definition, exercising final authority on behalf of the county.  As the Fifth Circuit has stated:

> In premising the county's liability on whether its governing body had ratified the alleged actions of these officials, i.e., whether they had acted pursuant to an official county policy or custom, the district court inadvertently overlooked the possibility that the sheriff and district attorney

---

[37]The plurality is mistaken in its contention that the Georgia cases <u>Board of Comm'rs of Randolph County v. Wilson</u>, 396 S.E.2d 903 (Ga. 1990), <u>Chaffin v. Calhoun</u>, 415 S.E.2d 906 (Ga. 1992), and <u>Warren v. Walton</u>, 202 S.E.2d 405 (Ga. 1973), stand for the proposition that "county sheriffs are subject to the control of the Georgia legislature."  Plurality Opinion at 14.  As the plurality correctly notes, these cases do hold that sheriffs are not employees of the county commission, and I do not contend otherwise.  But the fact that the sheriff is not an employee of the county commission does not make him a state officer.  <u>See, e.g., Coffey v. Brooks County</u>, 500 S.E.2d 341, 351 (Ga. App. 1998), <u>rev'd in part, on other grounds, Rowe v. Coffey</u>, 515 S.E.2d 375 (Ga. 1999), discussed <u>infra</u> note 39.  Moreover, these three cases do not support the plurality's argument of state control; rather, they refute it.  Two of them explicitly state that sheriffs are county officers.  <u>See Randolph County</u>, 396 S.E.2d at 904; <u>Warren</u>, 202 S.E.2d at 409.  In the third, the Georgia Supreme Court described the sheriff as "an elected, constitutional officer" and upheld the county commission's authority to remove about forty-seven percent of the sheriff's budget.  <u>Chaffin</u>, 415 S.E.2d at 907.  All three of these cases represent the Georgia Supreme Court's effort to strike a balance between the commission's budgetary power and the sheriff's independence, which I discuss in greater detail below.

were themselves the final policymakers with respect to the matters under their jurisdiction whose actions, to the citizens of Upton County, were the actions of the county itself. Two configurations can lead to a municipality's liability under section 1983 for the acts of its officials. In the first . . . a municipality's final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. In the second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved. We find the latter, not the former, to be applicable in the instant case.

Turner v. Upton County, 915 F.2d 133, 136 (5th Cir. 1990). In Praprotnik, the Supreme Court clearly recognized the viability of such a structure of co-equal departments or officials as final policymakers. See Praprotnik, 485 U.S. at 126. Specifically, the Court stated that "there will be cases in which policymaking responsibility is shared among more than one official or body." Id. When one county institution cannot review another, and vice versa, each is a final policymaker for the county:

> Assuming that applicable law does not make the decisions of the Commission reviewable by the Mayor and Alderman, or vice versa, one would have to conclude that policy decisions made either by the Mayor and Alderman or by the Commission would be attributable to the city itself.

Id. (emphasis added). Thus, courts have credited the possibility that § 1983 liability may obtain because an official outside the county legislative body

nonetheless acts as the county's final policymaker in a particular area, or on a particular issue.

This analysis applies with particular force here, where the county sheriff is recognized as an independent county officer by the state constitution itself. See, e.g., Chaffin, 415 S.E.2d at 907 (referring to the sheriff as an "elected constitutional officer"). The sheriff is not an employee of the County because Georgia local government operates on a separation of powers principle, with the sheriffs serving as independent county officers.[38] Though the plurality's analysis presupposes that sheriffs must answer directly to some higher authority, Georgia has made them independent county officers answerable to the voters of the

---

[38]The plurality addresses this argument by discussing the county commission's "head role" in the county government, based on factors such as its ability to enter into contracts for the county and its receipt of process served on the county. See Plurality Opinion at 32-34. The county commission may very well be the final policymaking body for the county with respect to these functions. For instance, there is no question that the county commission has final authority regarding county fiscal policy, and its contractual prerogatives are but one facet of this power. However, this does not answer the question of whether the sheriff is the final policymaker for the county with respect to law enforcement or other policymaking areas. As the Supreme Court stated in Pembaur v. City of Cincinnati, 475 U.S. 469, 484 (1986), "the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level." The Georgia Court of Appeals has explained the complicated relationship between the sheriff and the county commission:

> [T]he sheriff is not an employee of a county, because his or her duties are separate and independent from the county as a governmental entity. The sheriff is not an entity of the State, either as an agency or department. The sheriff is a county officer; however, the sheriff is independent of and not answerable to the governing authorities of the county.

Coffey v. Brooks County, 500 S.E.2d at 351 (internal citations omitted).

80

county.[39]  A failure to recognize this salient feature of Georgia law disrespects Georgia's entitlement to structure its county governments as it sees fit.[40]

This separation of powers structure can be illustrated by a quick examination of the process by which counties appropriate and spend limited local resources.  While the county commission has full authority to determine the amount of the sheriff's funding, the sheriff has unfettered discretion to expend these resources in the performance of his duties.  The Georgia Supreme Court has time and again taken care to preserve the delicate balance of power between these two sectors of county government, thereby vindicating the county commission's general responsibility for the public fisc without endorsing any notion of direct control over the sheriff in the execution of his or her official duties.  See, e.g., Randolph County, 396 S.E.2d at 903; Chaffin, 415 S.E.2d at 907.[41]  The sheriff's

---

[39]Thus, the plurality applies a sort of reverse "respondeat superior" test to determine liability:  to wit, because the sheriff is not answerable to or "controlled" by the board of commissioners, the county cannot be liable for the sheriff's constitutional violations. Of course, there is great irony in this holding because the Supreme Court has conversely held that local governments cannot be held liable for the actions of their officials who are employees without resorting to the "repeatedly rejected" respondeat superior doctrine.  Praprotnik, 485 U.S. at 125, n.2.

[40]The plurality ignores the reality that Georgia's county government is structured differently than Alabama's.  Indeed, the Alabama Supreme Court itself has recognized this fact, finding that Georgia has made its sheriffs county officers.  See Parker, 519 So. 2d at 445 (additionally citing Illinois, Tennessee, Florida, Georgia, and New York as "jurisdictions whose constitutions, unlike Alabama's, clearly make sheriffs county officers").

[41]See supra note 38.

discretion in utilizing county funds does not negate his position as a county official, any more than the independence of the President from the United States Congress negates his position as an officer of our federal government.[42]  The tension between the commission's budgetary authority and the sheriff's entitlement to place certain conditions on its exercise suggests a separation of powers akin to that of the federal government:  each sector of the county government both retains complete independence in its own sphere and represents the county when it acts.

### III.  CONCLUSION

The sole issue before us in this case is whether a sheriff has final policymaking authority when maintaining and recalling criminal warrants in Georgia's GCIC database.  On the particular facts before us, I conclude that the sheriff's role in this capacity was not a county area of responsibility.  However, I

---

[42]The sheriff likewise represents the county if he chooses to provide services for other entities. When a sheriff contracts to provide law enforcement, process service, and judgment execution to municipalities, compensation for these services goes to the county's general fund. Ga. Code Ann. § 15-16-13 (2002 Supp.); City of Lithia Springs v. Turley, 526 S.E.2d 364 (Ga. App. 1999).  A sheriff also receives a small sum for summoning jurors to service in city and state (but not county) courts, which also benefits the county coffers.  Ga. Code Ann. § 15-16-21(a) (2001). These fees for summoning jurors to all courts other than those of the counties underscore sheriffs' county status, presumably reflecting the fact that the sheriff's general budget, since it is appropriated by the county itself, already includes reasonable provision for services provided to the county courts.

find absolutely no support for the plurality's extraneous suggestion that Georgia

law designates sheriffs as anything other than county officers.